Brent N. RUSHFORTH, Appellant,

v.

**COUNCIL OF ECONOMIC
ADVISERS, et al.**

No. 84–5428.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 7, 1985.
Decided May 24, 1985.

Nicholas C. Yost, Washington, D.C., for appellant.

Andrea Newmark, Atty., Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty. and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellees.

Before WRIGHT, BORK and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge.

This action was brought under the Freedom of Information Act, 5 U.S.C. § 552 (1982), and the Government in the Sunshine

Act, 5 U.S.C. § 552b (1982), seeking relief from the failure of the Council of Economic Advisers ("CEA" or "Council") to comply with those two statutes. The District Court dismissed the Freedom of Information Act ("FOIA") claim, but also opined that summary judgment for CEA would be warranted in any event. In addition, the trial court granted summary judgment in favor of the CEA on the Government in the Sunshine Act ("Sunshine Act") claim. We affirm.

I

Brent Rushforth, a Washington, D.C. attorney, submitted an FOIA request to CEA for copies of the Council's regulations implementing both FOIA and the Sunshine Act. In its response to Mr. Rushforth's inquiry, the CEA advanced the position that the Council is not an "agency" for purposes of FOIA and is thus not required to comply with the Act. Appellant thereupon brought suit in the United States District Court for the District of Columbia, seeking "declaratory, mandatory, and injunctive relief from CEA's total failure to comply with either the Government in the Sunshine Act ... or with [FOIA]." Complaint at 1, *reprinted in* Joint Appendix at 6, 6. Specifically, appellant asked the District Court to declare CEA in violation of both statutes, to require CEA to adopt regulations implementing both Acts, to enjoin future violations of either Act, and to "issue such other and further relief as may be appropriate." Complaint at 7–8, Joint Appendix at 12–13. Appellant moved for summary judgment; CEA moved for dismissal or, alternatively, for summary judgment.

After the cross-motions for summary judgment were filed, Mr. Rushforth submitted to CEA a second FOIA request. He requested all documents falling into any of eight categories. When no response was received within ten working days,[1] appellant filed a "Supplemental Complaint" in the already pending litigation. In that pleading, appellant averred that he had requested information with respect to studies, reports, and other documents from CEA and had received no response from the Council within ten working days. He also attached a copy of the FOIA request. When CEA eventually did respond through administrative channels, the Council again maintained that its records were not agency records subject to FOIA; while turning over voluntarily certain materials to appellant,[2] the CEA withheld some of the requested documents.

Defendants moved to dismiss the supplemental complaint or, alternatively, for summary judgment. The District Court in due course entered an order and memorandum opinion dismissing appellant's FOIA claim and granting summary judgment in favor of CEA on the Government in the Sunshine Act claim. With regard to the FOIA claim, the court held, first, that plaintiff lacked standing. In the court's view, Mr. Rushforth had not in the first instance requested a disclosure of *existing* documents, and the court lacked authority under FOIA to order the CEA to adopt and then release implementing regulations. The court went on to hold, moreover, that even if plaintiff had standing in light of his second FOIA request, CEA would be entitled to summary judgment inasmuch as the Council is not an "agency" within the meaning of FOIA. As to the Sunshine Act claim, the court held that the Act did not apply to CEA inasmuch as the Council is not a collegial body.[3] This appeal followed.

---

**1.** An FOIA request not answered within 10 working days may be treated as denied. *See* 5 U.S.C. §§ 552(a)(6)(A)(i), 552(a)(6)(C).

**2.** Several of the requested documents had, independently of appellant's FOIA request and this litigation, been made public by the Council and had already been made available to appellant's counsel.

**3.** Mr. Rushforth clearly had standing as to the Sunshine Act action. *See* 5 U.S.C. § 552b(g) ("Any person may bring a proceeding in the United States District Court for the District of Columbia to require an agency to promulgate such regulations within the time period specified herein."). With regard to the FOIA action, it is undisputed that appellant, in his second request, did ask for existing documents. Stand-

## II

The first issue before us is whether the CEA is an "agency" within the meaning of FOIA. The operative statutory provision sets forth the following definition of that term: "For purposes of this section, the term agency ... includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(e). Plaintiff's argument is simple and straightforward: since the CEA is an establishment in the Executive Office of the President, it is subject to FOIA. But the issue is not so easily resolved. As the Supreme Court has made clear, " 'Executive Office' does not include the Office of the President ... [, and] 'the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President' are not included within the term 'agency' under the FOIA." *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 156, 100 S.Ct. 960, 971, 63 L.Ed.2d 267 (1980) (quoting H.R.Rep. No. 1380, 93d Cong., 2d Sess. 8 (1974)).

While not all units within the Executive Office of the President are subject to FOIA, appellant seeks to buttress his position by repairing to the legislative history, specifically the House Report on the 1974 amendments to FOIA. That Report states that the definition of "agency" was being expanded from that which previously obtained.[4] The Report further states that "[t]he term 'establishment in the Executive Office of the President,' as used in this amendment, means such functional entities as ... the Council of Economic Advis-

ers...." H.R.Rep. No. 876, 93d Cong., 2d Sess. 8 (1974), U.S.Code Cong. & Admin. News 1974, 6267, 6274. It is thus clear, as appellant argues, that the House version of the 1974 amendments contemplated that the CEA would be subject to FOIA.

But the House report does not stand alone. The subsequent Conference Report directly undercuts the House Report's otherwise clear expression; while observing that "[t]he conference substitute follows the House bill," the Report goes on to say: "[W]ith respect to the meaning of the term 'Executive Office of the President' the conferees intend the result reached in *Soucie v. David*, 448 F.2d 1067 (C.A.D.C.1971). The term is not to be interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." H.R.Rep. No. 1380, 93d Cong., 2d Sess. 14–15 (1974); *see also* S.Rep. No. 1200, 93d Cong., 2d Sess. 15 (1974) (identical language), U.S.Code Cong. & Admin.News 1974, 6293. Thus, the Conference Report speaks to the precise issue of the meaning of the phrase "Executive Office of the President" and specifically states an intent to follow the result in *Soucie*, namely determining whether the sole function of the entity within the Executive Office is to advise and assist the President. Where, as here, the specific mention of the CEA in the House Report was dropped and a specific, judicially formulated test was adopted by the Conference Committee for determining the FOIA status of such entities, the House Report is entitled to little weight in this respect. Manifestly, the Conference elected to embrace a test to be substituted for a listing of the entities to be included; the outcome of the case before us should, accordingly,

ing does, of course, lie as a general matter where a request is submitted under FOIA for existing documents, as opposed to a request that the agency create materials which did not previously exist.

**4.** The House Report states that "the definition of 'agency' has been expanded to include those entities which may not be considered agencies under section 551(1) of title 5, U.S.Code, but

which perform governmental functions and control information of interest to the public." H.R.REP. No. 876, 93d Cong., 2d Sess. 8 (1974), U.S.Code Cong. & Admin.News 1974, 6274. Now included were "Government corporations, Government controlled corporations [and] other establishments within the executive branch, such as the U.S. Postal Service." *Id.*

turn on an examination of *Soucie* and the sole-function test enunciated in that case.

In *Soucie*, the issue was whether the Office of Science and Technology ("OST"), an entity in the Executive Office of the President, was an agency within the meaning of FOIA. Concluding that OST was indeed a FOIA-covered agency, the *Soucie* court began by observing OST's genesis as the creature of an Executive Branch reorganization plan. That plan transferred the functions of the National Science Foundation ("NSF" or "the Foundation") to the OST, an "administrative unit outside the White House, but in the Executive Office of the President on roughly the same basis as ... the Council of Economic Advisers...." *Soucie, supra*, 448 F.2d at 1074. However, while this reorganization resulted in an administrative unit located, hierarchically, in the same position as CEA, there is no indication that the functional roles of CEA and OST were the same; and, critically, it was the functional role of the agency on which *Soucie* turned.

In *Soucie*, the court concluded that "[b]y virtue of its independent function of evaluating federal programs, the OST must be regarded as an agency subject to the APA and the Freedom of Information Act." *Id.* at 1075. The court reached this conclusion only after expressly taking into account the fact that OST had assumed the functions of the National Science Foundation; moreover, the court observed that OST was specifically authorized to evaluate the scientific research programs of federal agencies. The court stated: "If the OST's sole function were to advise and assist the President, that might be taken as an indication that the OST is part of the President's staff and not a separate agency." It was, rather, the existence of the NSF functions, now vested in OST pursuant to the reorganization, that turned the tide. Those functions included the initiation and support of research, awarding scholarships, fostering the interchange of information and evaluating the status of the sciences in correlating the research and education programs undertaken by the Foundation. *See* 42 U.S.C. § 1482 (1982). Those functions clearly go beyond advice and assistance. In a word, OST could take direct action and thus was deemed to be an administrative agency. As we will discuss *infra*, the activities of the CEA and OST differ to the point that the status of CEA is not controlled by *Soucie;* but at the same time, the test formulated by *Soucie* is plainly the standard to be applied to determine the Council's status.

The second case from which appellant seeks to draw support is *Pacific Legal Foundation v. Council on Environmental Quality*, 636 F.2d 1259 (D.C.Cir.1980). There, the Council on Environmental Quality ("CEQ") was held to be an agency for FOIA and Sunshine Act purposes. Since the statutes organizing CEA and CEQ are, for all practical purposes, identical, *compare* 15 U.S.C. § 1023 (1982) *with* 42 U.S.C. §§ 4342–45 (1982), appellant argues that *Pacific Legal Foundation*'s conclusion must carry over and apply to the CEA. However, while the statutes are the same, the functions performed by the two entities differ markedly. The court in *Pacific Legal Foundation* specifically observed that CEQ's functions had been expanded by several executive orders, that CEQ coordinated federal environmental regulatory programs, issued guidelines for preparing environmental impact statements, and promulgated regulations for implementing the procedural provisions of the National Environmental Policy Act, Pub.L. No. 91–190, 83 Stat. 852 (1970). *Pacific Legal Foundation, supra*, 636 F.2d at 1262. Furthermore, in that litigation the CEQ actually admitted that it was an agency; it contended more narrowly that it was not an agency at those times when it was advising the President and that the Sunshine Act did not apply to its advisory function. This court rejected the CEQ's proffered on again-off again definition and held that " '[o]nce an entity is found to be an agency, this determination will not vary according to its specific function in each individual case.' " *Id.* at 1264 (quoting *Ryan v. Dept. of Justice*, 617 F.2d 781, 788 (D.C.Cir.1980)).

*Pacific Legal Foundation*'s conclusion—that CEQ is an agency—simply does not, on analysis, carry over to the case at hand. The expanded duties of the CEQ clearly took that body out of the realm of entities the sole function of which is to advise and assist the President. CEA's duties, in contrast, have not similarly been expanded. CEA simply has no independent authority such as that enjoyed either by CEQ or OST.[5]

■ Our task, then, is to apply *Soucie*'s sole-function test to the role of CEA. Doing so leads ineluctably to the conclusion that its sole function is to advise and assist the President. Each one of the CEA's enumerated statutory duties is directed at providing such advice and assistance to the President.[6] While appellant emphasizes

5. Noting the near identity of the statutes creating CEQ and CEA, appellant mounts a policy argument that the President should not be allowed to take an entity out of, or place an entity in, FOIA agency status by the mere expedient of adding or eliminating duties. This argument is unavailing. Congress' intent would appear to have been to require entities having authority and the ability to act, but not those whose sole function was to render advice and assistance to the President, to be subject to FOIA. If the President adds duties to an entity which bring it outside the sole-function test, Congress would want the entity to be covered. There is no reason why any other entity with a similarly worded organic statute should be dragged along with it.

6. § 1023. Council of Economic Advisers

(a) Creation; composition; qualifications; selection of chairman and vice chairman

There is created in the Executive Office of the President a Council of Economic Advisers (hereinafter called the "Council"). The Council shall be composed of three members who shall be appointed by the President by and with the advice and consent of the Senate, and each of whom shall be a person who, as a result of his training, experience, and attainments, is exceptionally qualified to analyze and interpret economic developments, to appraise programs and activities of the Government in the light of the policy declared in section 1021 of this title, and to formulate and recommend national economic policy to promote full employment, production, and purchasing power under free competitive enterprise. The President shall designate one of the members of the Council as chairman and one as vice chairman, who shall act as chairman in the absence of the chairman.

(b) Employment of specialists, experts, and other personnel

The Council is authorized to employ, and fix the compensation of, such specialists and other experts as may be necessary for the carrying out of its functions under this chapter, without regard to the civil-service laws, and is authorized, subject to the civil-service laws, to employ such other officers and employees as may be necessary for carrying out its functions under this chapter, and fix their compensation in accordance with chapter 51 and subchapter III of chapter 53 of title 5.

(c) Duties

It shall be the duty and function of the Council—

(1) to assist and advise the President in the preparation of the Economic Report;

(2) to gather timely and authoritative information concerning economic developments and economic trends, both current and prospective, to analyze and interpret such information in the light of the policy declared in section 1021 of this title for the purpose of determining whether such developments and trends are interfering, or are likely to interfere, with the achievement of such policy, and to compile and submit to the President studies relating to such developments and trends;

(3) to appraise the various programs and activities of the Federal Government in the light of the policy declared in section 1021 of this title for the purpose of determining the extent to which they are contributing, and the extent to which they are not contributing, to the achievement of such policy, and to make recommendations to the President with respect thereto;

(4) to develop and recommend to the President national economic policies to foster and promote free competitive enterprise including small and larger business, to avoid economic fluctuations or to diminish the effects thereof, and to maintain full employment, production, and purchasing power;

(5) to make and furnish such studies, reports thereon, and recommendations with respect to matters of Federal economic policy and legislation as the President may request.

(d) Annual report

The Council shall make an annual report to the President in December of each year.

(e) Consultation with other groups and agencies; utilization of Governmental services and private research agencies

In exercising its powers, functions and duties under this chapter—

(1) the Council may constitute such advisory committees and may consult with such representatives of industry, agriculture, labor, consumers, State and local government, and other groups, as it deems advisable, and shall consult with the board or boards established under section 1022f of this title;

that in each instance the language "to the President" appears as part of a conjunction, that fact does not affect the conclusion fairly to be drawn. For example, the CEA is directed to appraise federal programs relative to a particular statutory policy and make recommendations to the President in that regard. 15 U.S.C. § 1023(c)(3). The duty to appraise is directly connected to the Council's duty to make recommendations. CEA has no regulatory power under the statute. It cannot fund projects based on the appraisal, as OST might, nor can it issue regulations for procedures based on the appraisals, as CEQ might.

 We can discern no basis in the statute for concluding that CEA has any function save that of advising and assisting the President. Nor has any evidence been brought forward to show that some other function in fact exists. The various acts of CEA members, as enumerated by appellant, do not evidence any independent authority or power;[7] in consequence, we agree with Judge Oberdorfer's conclusion that CEA should not be considered an agency for purposes of the FOIA.

### III

Inasmuch as the Council of Economic Advisers is not an agency for FOIA purposes, it follows of necessity that the CEA is, under the terms of the Sunshine Act, not subject to that statute either. The reason is that the Sunshine Act expressly incorporates the FOIA definition of agency. *See* 5 U.S.C. § 552b(a)(1) ("the term 'agency' means any agency as defined in section 552(e) ..."). Furthermore, even if CEA were an agency within the meaning of FOIA, the Council would still not fall within the scope of the Sunshine Act. The pertinent definition, set forth in section 552b, continues as follows: An agency for purposes of section 552b is one "headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such positions by the President with the advice and consent of the Senate...." *Id.* The District Court held that CEA is not a collegial body. If that conclusion is correct, CEA is not subject to the Act.

First, the District Court determined, based on the declaration of then-CEA Chairman Martin Feldstein, that the CEA does not in fact operate collegially. That declaration is unrebutted; hence, to the extent that the question is one of fact, the Feldstein declaration would be fully adequate to support the court's grant of summary judgment in favor of the Council. However, if the CEA is legally constituted as a collegial body, its actual mode of operation might weigh less heavily in our analysis.

By its terms, the organic statute creating the CEA appears to envision a collegial group. After all, the statute creates a "Council" of advisers. The Council consists of three members confirmed by the Senate, with one member later being designated by the President as chairman. This structure might reasonably be construed to suggest roughly co-equal status among the

---

(2) the Council shall, to the fullest extent possible, utilize the services, facilities, and information (including statistical information) of other Government agencies as well as of private research agencies, in order that duplication of effort and expense may be avoided.

In its work under this chapter and the Full Employment and Balanced Growth Act of 1978 [15 U.S.C. §§ 3101 *et seq.* (1982)] the Council is authorized and directed to seek and obtain the cooperation of the various executive and independent agencies in the development of specialized studies essential to its responsibilities.

(f) Appropriations

To enable the Council to exercise its powers, functions, and duties under this chapter, there are authorized to be appropriated such sums as may be necessary.

15 U.S.C. § 1023 (1982).

7. Appellant argues that the fact that the members of CEA are appointed with the advice and consent of the Senate and are required to testify before the Congress should carry important weight. Neither the nature of the appointment nor the accompanying duty to testify before Congress, however, speaks to the function of the CEA; it is, at bottom, its function that determines an entity's status for FOIA purposes.

three members. The statute also speaks of various activities of the "Council" and does little or nothing to separate out the chairman.[8]

The CEA was reorganized in 1953, and administration of the Council was centralized in the chairman. *See* Reorganization Plan No. 9 of 1953, 18 Fed.Reg. 4543, 67 Stat. 644 (1953). However, it is not clear that the plan negated any collegiality that might otherwise be reflected by the statute. The increased responsibility enunciated in the 1953 Reorganization Plan spoke primarily to management of the Council's staff. The duty to report to the President was also vested in the chairman, rather than the Council. Appellant argues from all this that the fact that the chairman is to report on the *activities of the Council* indicates that the entity's action is joint and collegial. We are unpersuaded. Any head of a multi-member entity could, of course, be instructed to report on the activities of his or her agency. Such an instruction simply does not translate into a requirement that he or she run the agency collegially.

 While there is language in the statute (that may or may not be weakened by the Reorganization Plan) evoking notions of collegiality, we can discern no requirement in the statute that the CEA must be so run. Absent such a requirement, and given the unrefuted factual averment that the Council is not and has not been run collegially, we conclude that the CEA is not a collegial group subject to the Sunshine Act.

Appellant argues that this conclusion would be contrary to *Pacific Legal Foundation, supra,* but his argument rests, at bottom, on the near identity of the statutes creating CEA and CEQ. Since the two entities have in time evolved differently in their functions and would appear in actual practice to operate quite differently, *see Pacific Legal Foundation, supra,* 636 F.2d at 1265–66 (indicating that at least some CEQ business requires an affirmative

vote of two members), the status of those two entities under the Sunshine Act simply need not be the same.

## IV

The judgment of the District Court as to both the FOIA and Sunshine Act claims is, for the foregoing reasons,

*Affirmed.*