INTERNATIONAL LABOR RIGHTS
EDUCATION AND RESEARCH
FUND, et al., Plaintiffs,

v.

George BUSH, et al., Defendants.

Civ. A. No. 90–0728.

United States District Court,
District of Columbia.

Oct. 25, 1990.

See also, 752 F.Supp. 490.

Terry Collingsworth, Los Angeles, Cal., Deborah C. Malamud, Washington, D.C., for plaintiffs.

Dennis G. Linder, Arthur R. Goldberg, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

Twenty-three plaintiffs, consisting of labor unions and human rights organizations, have sued President Bush and six members of the Cabinet alleging that defendants have in various respects failed to enforce the worker rights provisions of the Generalized System of Preferences of the Trade Act of 1974 ("GSP"), 19 U.S.C. §§ 2461–66.

By prior decision, *International Labor Rights Education and Research Fund v. Bush,* 752 F.Supp. 490 (D.D.C.1990), this Court ruled that it has jurisdiction over the controversy. Defendants have now moved to dismiss, contending that the claims are not justiciable and that plaintiffs lack standing. The motion has been thoroughly briefed and considered. For reasons set out below, the motion must be granted and the complaint dismissed.

GSP was established as part of the Trade Act of 1974, 19 U.S.C. §§ 2411, *et seq.* When GSP was scheduled to expire in January 1985, Congress extended the program in 1984 by the Generalized System of Preferences Renewal Act of 1984, 19 U.S.C. §§ 2461–66, which, among other things, added the workers rights provision at issue here. Under the GSP, the President is authorized to "provide duty-free treatment for any eligible article from any beneficiary developing country." 19 U.S.C. § 2461. A "beneficiary developing country" is defined as "any country with respect to which there is in effect an Executive order or Presidential proclamation by the President of the United States designating such country as a beneficiary developing country for purposes of this subchapter." *Id.* § 2462(a).

As amended, GSP provides a system for unilateral grants of tariff preferences by the United States to developing countries to benefit sectors of developing countries that are not competitive internationally, with mechanisms to protect domestic industries sensitive to import competition from articles receiving preferential tariff treatment. *See* House Report No. 98–1090, 98th Cong., 2d Sess., *reprinted in* 1984 U.S. Code Cong. & Adm.News 5101–02. More specifically, GSP is designed: (1) to promote development in developing countries, which need temporary preferential advantages to compete effectively with industrialized countries; (2) to promote the idea that trade is more effective than direct aid in promoting development; (3) to encourage increased trade liberalization measures; and (4) to integrate developing coun-

tries into the international trading system in a manner commensurate with their development by encouraging them to reduce trade barriers, to protect intellectual property rights, and to provide internationally recognized workers rights. *See* 19 U.S.C. § 2461 note (1988).

After the GSP was first enacted in 1974, the President designated certain articles as eligible for duty-free treatment and designated certain countries as beneficiary developing countries. *See* Exec. Order 11888, 40 Fed.Reg. 55276 (Nov. 24, 1975). The functions of the President for administering the GSP were initially delegated by Executive Order to the Special Representative for Trade Negotiations, the predecessor of the United States Trade Representative ("USTR") created as part of the Trade Expansion Act of 1962. 19 U.S.C. § 1872, Pub.L. No. 87–794. Exec. Order 11846, 40 Fed.Reg. 13456 (March 27, 1975). After the USTR was created in 1979 under Reorganization Plan No. 3 of 1979, 19 U.S.C. § 2171 note (1988), it assumed the duties of the Special Representative for Trade Negotiations. Following the 1984 amendments, extending the GSP through July 4, 1993, the USTR promulgated regulations establishing procedures for the General and Annual Review process required by the GSP. 15 CFR § 2007.

The worker rights provisions were added to the GSP statute effective January 1, 1985, and are found in section 2462(b) of 19 U.S.C., which states that the President "shall not designate any country ... (7) if such country *has not taken or is not taking steps* to afford internationally recognized workers rights ..." (emphasis added).

The complaint alleges that defendants have not conducted any meaningful investigation since 1985 to assess accurately whether or not countries previously designated under GSP prior to the amendment met the new worker rights standard. Section 2464(b) provides:

> The President shall ... withdraw or suspend the designation of any country as a beneficiary developing country if ... he determines that as a result of

changed circumstances such country would be barred from designation as a beneficiary developing country under Section 2462(b) of this title.

The statute also requires that the President "conduct a general review" of beneficiary developing country status "[n]ot later than January 4, 1987, and periodically thereafter." 19 U.S.C. § 2464(c)(2)(A). The President did complete a general review on January 3, 1987. "Periodically thereafter" is not defined in the statute.

Not only is there only a vague requirement of review from time to time but also GSP contains no specification as to how the President shall make his determination. There is no definition of what constitutes "has not taken ... steps" or "is not taking steps" to afford internationally recognized rights. Indeed, there is no requirement that the President make findings of fact or any indication that Congress directed or instructed the President as to how he should implement his general withdrawal or suspension authority.

Given this apparent total lack of standards, coupled with the discretion preserved by the terms of the GSP statute itself and implicit in the President's special and separate authority in the areas of foreign policy there is obviously no statutory direction which provides any basis for the Court to act. The Court cannot interfere with the President's discretionary judgment because there is no law to apply.

A more detailed examination of the complaint and statutory provisions in the light of well-established precedent will demonstrate that the controversy is definitely nonjusticiable. In such circumstances, plaintiffs have no standing to pursue their claims.

The complaint reflects what has emerged as an increasing attempts by dissatisfied interests to invoke the judicial process to resolve broad issues of public policy that are properly only the special concern of the Congress. In this instance, it is a long, argumentative document expressing a variety of problems different organizations have encountered with the manner in which the President and his subordinates have

interpreted and implemented GSP. They ask the Court by declaratory judgment and mandamus to instruct the President as to the meaning of the GSP and then to order how he should proceed in the future in investigating and imposing sanctions on the developing countries of the world who participate in the GSP program. While it is apparent that plaintiffs find fault with various procedures followed by the Chief Executive since 1985, there is not a single instance in the 28–page complaint which challenges any specific decision of the President. Whether this is because the many plaintiffs themselves have diverse, if not conflicting, interests or because alleged violations of workers rights by GSP beneficiary developing countries cannot be documented, the result is quite obviously merely a generalized objection which fails to state a cause of action which a federal court can entertain.

The complaint strikes directly at the President's discretionary authority in a broad area of foreign relations generally and under the statute at issue particularly. Congress gave the President wide, unrestricted latitude when it renewed the GSP program in 1984 and included new considerations for his attention, such as workers rights. But this added policy was again stated in discretionary terms. Section 2461 of 19 U.S.C. provides that in taking action providing duty-free status for articles imported from a member beneficiary developing country, the President "shall have due regard for" (1) the effect on developing countries; (2) comparable efforts by other developed countries; (3) the impact on domestic producers of competitive products; and (4) the beneficiary developing country's competitiveness with respect to eligible articles. 19 U.S.C. § 2461.

Under 19 U.S.C. § 2464(a), the President is asked to consider these same factors, among others, before withdrawing or limiting duty-free treatment. By adding reference to workers rights as an additional consideration, that is, whether or not a country observes "internationally recognized worker rights," the broad discretionary aspects of the President's GSP authority was emphasized. These rights, defined in 19 U.S.C. § 2462(a), include:

(A) the right of association;

(B) the right to organize and bargain collectively;

(C) a prohibition on the use of any form of forced or compulsory labor;

(D) a minimum age of employment for children; and

(E) acceptable conditions of work with respect to minimum wages, hours of work, and occupational safety and health.

On top of these generalized discretionary considerations, it should again be noted that the President's duty under GSP is only to consider whether or not a beneficiary developing country is "not taking steps" to "afford" "workers rights in the country." Yet compliance with this generalized standard is part of a condition of membership in GSP in the first place. All beneficiary developing countries have met this criteria to the President's satisfaction, as they must, under the provisions of 19 U.S.C. § 2462(b)(7), and withdrawal is only appropriate if "changed circumstances" are determined sufficient to alter the existing GSP membership status of the developing country.

Thus, throughout the statutory scheme the President is authorized to apply vague criteria based on appraisal of interrelated foreign trade and policy considerations, including those specified in § 2462(b)(1)–(6), as set out below:

(1) if a country is a Communist country;

(2) if a country is a member of OPEC;

(3) if a country affords preferential treatment to products of a developed country which may have adverse effects on U.S. commerce;

(4) if a country fails to recognize ownership rights of U.S. citizens or corporations, including patents or trademarks;

(5) if a country fails to recognize or enforce arbitral awards in favor of U.S. citizens or corporations; and

(6) if a country aids or abets individuals or groups which have committed acts of international terrorism.

The simple fact is that Congress has enunciated general policy guidelines and left it to the Chief Executive's discretion to carry out policy within those guidelines. Congress has provided no defined standard for reviewing his discretionary determinations or determining whether existing GSP regulations violate the vague statutory requirements, and any effort such as this to obtain judicial review is misplaced. *See, e.g., Japan Whaling Ass'n v. American Cetacean Society*, 478 U.S. 221, 233, 106 S.Ct. 2860, 2867–68, 92 L.Ed.2d 166 (1986); *Langevin v. Chenango Court, Inc.*, 447 F.2d 296, 303 (2d Cir.1971) (quoting Davis, *Administrative Law Treatise*, § 28.16 (Supp.1970)).

Plaintiffs gain no benefit from invoking the Administrative Procedure Act. Even if the President is properly deemed an "agency" within the meaning of the APA, a doubtful proposition, *see Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 156, 100 S.Ct. 960, 971, 63 L.Ed.2d 267 (1980); *Rushforth v. Council of Economic Advisers*, 762 F.2d 1038, 1040 (D.C.Cir.1985); 1 Davis, *Administrative Law Treatise* § 1.2 at 8 (2d ed. 1978), judicial review is nonetheless barred since in all respects the determinations required are "committed to agency discretion" and review is forbidden by 5 U.S.C. § 701(a)(2). *See, e.g., Webster v. Doe*, 486 U.S. 592, 600–01, 108 S.Ct. 2047, 2052–53, 100 L.Ed.2d 632 (1988); *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1983); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820–21, 28 L.Ed.2d 136 (1971).

The President has carried out responsibilities under the Act. General and special review are conducted and publicized from time to time. Plaintiffs have no legal authority to take over the functions and direct the President in this unstructured area of foreign policy as to how he should conduct or not conduct his business.

It cannot be disputed that the review process has proven effective on some occasions when invoked. Indeed, the President has informed Congress that significant results have been obtained by this process. Some plaintiffs have petitioned for review in particular situations. Because review was not allowed or was delayed, they urge that the statute requires a review when a petition is filed. This interpretation is an effort to turn what is by the terms of the statute an essentially discretionary function with significant foreign policy aspects into a mandatory regulatory scheme not unlike those developed to implement the functions of domestic agencies like the Federal Trade Commission. While this approach would benefit plaintiffs' cause, it would require the Court to develop criteria against which the President's exercise of judgment in a variety of areas peculiar to his functions would be weighed. This is not the role of an Article III judge. Efforts to limit or direct the President's role in this area is for Congress alone to address.

The Court will not be drawn into an extended analysis of the standing issue which consumes many pages of the briefs. No one can have standing to support a nonjusticiable claim. Plaintiffs have genuine programmatic concerns that they feel are being thwarted by departures from worker rights standards in certain beneficiary countries. Particularly, unions sense competition from developing countries that exploit labor to a degree that raises human rights concerns. Thus injury is adequately alleged. But injury alone is not enough if Congress has provided no effective remedy.

Accordingly, the complaint is dismissed, with prejudice, for failure to state a claim. The motion for preliminary injunction is dismissed as moot. Nothing in the foregoing shall be taken to limit any plaintiff from pursing remedies afforded under the GSP before the Customs Court or from petitioning the United States Trade Representative to consider different procedures governing petitions.