Paula JONES, Plaintiff,

v.

**THE EXECUTIVE OFFICE OF THE PRESIDENT, Defendant.**

No. 00–307.

United States District Court, District of Columbia.

March 13, 2001.

---

Larry Elliot Klayman, Judicial Watch, Incorporated, Washington, DC, for Paula Jones, plaintiff.

Stuart Alexander Licht, U.S. Department of Justice, Civil Division, Washington, DC, for Executive Office of the President, federal defendant.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

This matter, a Privacy Act action against the Executive Office of the President ("EOP"), comes before the Court on the EOP's Motion to Dismiss pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. In support of its motion, the EOP argues that the Privacy Act, 5 U.S.C. § 552a *et seq.*, does not apply to EOP staff or units whose sole function is to advise and assist the President. Upon consideration of the EOP's motion, Plaintiff Paula Jones' opposition,[1] the EOP's reply, Plaintiff's supplemental oppo-

---

1. Plaintiff filed her opposition together with a Cross Motion for Summary Judgment. Because the Court disposes of the case pursuant to EOP's motion under Rule 12(b), it does not reach Plaintiff's request for summary judgment. Accordingly, that motion shall be denied as moot.

sition, the EOP's response to the supplemental opposition, and the relevant law, the Court shall grant the motion to dismiss.[2]

## I. BACKGROUND

Plaintiff contends that the Clinton Administration EOP maintained a file on her and illegally used its contents "to attempt to smear and destroy her reputation." Compl. ¶ 14. Specifically, she alleges that Lanny J. Davis, a former Special Counsel to the President, had unauthorized access to the EOP files that contain information about Plaintiff. See id. ¶¶ 15–19. Plaintiff contends that she sought access to all such files pursuant to the Privacy Act, see id. ¶¶ 5–6, and that the EOP denied her request on the ground that it is not subject to the Act. See id. ¶¶ 7–8. According to Plaintiff, the EOP's rationale for its denial is incredible because White House officials have conceded the Act's applicability on several occasions in the past and because another court in this district has concluded that the Act applies. See id. ¶¶ 9–13.

Plaintiff contends that the EOP obtains information for its files unlawfully and uses the information to "attack[ ] or threaten[ ] attacks" on her and others. Id. ¶¶ 21–22. She argues that the EOP's improper maintenance and use of such records violates 5 U.S.C. § 552a(e)(1) and that its refusal to allow her access to them violates 5 U.S.C. § 552a(d)(1). See id. ¶¶ 23–25. In its Motion to Dismiss, the EOP contends that the allegations in Plaintiff's Complaint refer only to the Of-

fice of the Counsel to the President ("OCP"). The EOP argues that OCP is a subdivision of the White House Office, which is, in turn, a division of the EOP to which the Privacy Act does not apply. See Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss at 1 [hereinafter "EOP's Mem."].

## II. LEGAL STANDARD

■ The EOP brings its motion under Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), a motion to dismiss should be granted only if the "plaintiff[ ] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994) (citing *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir. 1979)). When considering a motion to dismiss under Rule 12(b)(6), the Court must resolve all factual doubts in favor of the plaintiff and allow the plaintiff the benefit of all inferences. *See EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C.Cir.1997).

■ Notwithstanding this liberal construction, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal,* 16 F.3d at 1276; *see also Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

■ In reviewing motions to dismiss for lack of jurisdiction pursuant to Rule

---

**2.** The Privacy Act issue in this case is virtually indistinguishable from that presented in *Sculimbrene v. Reno,* No. 99–2010 (D.D.C. Feb. 16, 2001) (CKK). In fact, the similarity extends well beyond the underlying issue. Both cases have been assigned to the undersigned judge, both name the EOP as a defendant, and, while the plaintiffs are different in the two cases, their lead counsel is the same.

Additionally, and perhaps not surprisingly, the parties have filed strikingly similar briefs in the two actions in which they voice essentially identical arguments for and against dismissal. Because the Privacy Act dispute in this case mirrors the Privacy Act dispute in *Sculimbrene* in virtually every respect, the Court's decision in this case very closely tracks its decision in *Sculimbrene.*

12(b)(1), district courts employ a standard virtually identical to that used for 12(b)(6) motions. *See, e.g., Vanover v. Hantman,* 77 F.Supp.2d 91, 98 (D.D.C.1999) (citing *Pitney Bowes Inc. v. U.S. Postal Serv.,* 27 F.Supp.2d 15, 19 (D.D.C.1998)). In the 12(b)(1) context, the plaintiff bears the burden of proving jurisdiction. *See id.*

## III. DISCUSSION

The Privacy Act governs federal agencies' acquisition, maintenance, use, and disclosure of information concerning individuals. When applicable, the Act provides that agencies may maintain "only such information about an individual that is relevant and necessary to accomplish a purpose of the agency as required by statute or by executive order of the President." 5 U.S.C. § 552a(e)(1). The Act further requires agencies maintaining such information to "establish appropriate administrative, technical and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity . . . ." *Id.* § 552a(e)(10). In addition, the Act prohibits agencies, subject to certain exceptions, from disclosing information about an individual in its records without the individual's consent. *See id.* § 552a(b).

Upon receipt of a proper request from an individual, any federal agency subject to the Privacy Act must permit that individual to have access to, and the opportunity to correct and amend, its records regarding that individual. *See id.* at § 552a(d). The Privacy Act grants jurisdiction to federal courts for civil actions to compel compliance with its terms and, in the case of intentional or willful violations, to award damages. *See id.* at § 552a(g).

■ The sole issue presently raised for this Court's determination is whether the White House Office, a unit within the EOP, may be considered an "agency" which is subject to the terms of the Privacy Act. *See* EOP's Mem. at 1–2.[3] The Privacy Act provides that the term "agency" means "agency" as defined by the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(f). *See* 5 U.S.C. § 552a(a)(1); *Dong v. Smithsonian Inst.,* 125 F.3d 877, 878 (D.C.Cir.1997) (holding that the Privacy Act "borrows the definition of 'agency' found in FOIA"). FOIA, in turn, defines "agency" as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of Government (including the Executive Office of the President), or any inde-

---

3. Plaintiff obliquely avers that divisions outside of the White House Office may have files responsive to her Privacy Act request. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss & Pl.'s Cross Mot. for Partial Summ. J. at 17 [hereinafter "Pl.'s Opp'n"]. Consequently, she argues that an analysis limited to the White House Office alone cannot be dispositive in this case. *See id.*

Liberally construing Plaintiff's Complaint, as it must at this preliminary stage, the Court detects no allegations that the challenged conduct relates to any division other than the White House Office or OCP, its subdivision. Namely, the Complaint only describes conduct undertaken by a former Special Counsel

to the President. *See* Compl. ¶¶ 15–19. Thus, that individual, during his affiliation with the EOP, was employed in the White House Office. Furthermore, to the hypothetical degree that his official conduct occurred outside the confines of the White House Office, he still acted as a Special Counsel to the President. Accordingly, the same reasoning applies because his "sole function [was] to advise and assist the President." *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 156, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980) (quoting H.R. CONF. REP. NO. 93–1380, at 15 (1974)) (describing limitations on the definition of "agency" in the Freedom of Information Act).

pendent regulatory agency." 5 U.S.C. § 552(f).

Although the plain language of the statute expressly includes the "Executive Office of the President," FOIA's legislative history specifies that the term "Executive Office of the President" is "not to be interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." S. CONF. REP. NO. 93–1200, at 15 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6923; H.R. CONF. REP. NO. 93–1380, at 14 (1974) (same). Recognizing congressional intent, the Supreme Court has held that the FOIA definition of "agency" does not include the "Office of the President," also known as the White House Office. *See Kissinger*, 445 U.S. at 156, 100 S.Ct. 960. The *Kissinger* Court based this finding, in part, on the Conference Report for the 1974 FOIA Amendments which indicate that the term "agency" shall not apply to "the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." *See id.* (citing H.R. CONF. REP. NO. 93–1380, at 15 (1974)). Accordingly, the Court held that such staff and units "are not included within the term 'agency' under the FOIA." *Id.*

Following the Supreme Court's opinion in *Kissinger*, the United States Court of Appeals for the District of Columbia Circuit recognized that "it has never been thought that the whole Executive Office of the President could be considered a discrete agency under FOIA." *United States v. Espy*, 145 F.3d 1369, 1373 (D.C.Cir. 1998). By the same rationale, the Court of Appeals noted that an entity within the EOP does not qualify as an "agency" unless it exercises "substantially independent authority." *Id.* Accordingly, the court noted that the Chief of Staff or the President's Counsel would not constitute an "agency" for FOIA purposes. *Id.; see also Nat'l Sec. Archive v. Archivist of the United States*, 909 F.2d 541, 545 (D.C.Cir. 1990) ("The Supreme Court has made clear that the [White House Office] is not an 'agency' for purposes of the FOIA.").

While they concur that the White House Office is exempt from FOIA, the parties dispute its status under the Privacy Act. Both Plaintiff and the EOP argue that the Privacy Act is in some way "clear" on its face with regard to this issue. That is, the EOP argues that the statute clearly adopts the FOIA definition of "agency" and construes that statement as an adoption of the FOIA definition precisely as it has been applied and interpreted in FOIA actions. *See* EOP's Mem. at 16–18. In contrast, Plaintiff argues that the plain text of the definition of "agency", at least as it appears in FOIA, includes the entire EOP. *See* Pl.'s Opp'n at 8, 11. In support of this argument, Plaintiff points to the legislative history of FOIA and the Privacy Act, and contends that this history reveals an intent to subject as many federal agencies as possible to the Acts.[4] *See id.* at 9–12.

There are two cases from this district which provide direct guidance on this is-

---

4. Plaintiff has filed a supplement to her opposition in which she produces "recently discovered evidence from the legislative history of the Privacy Act." Pl.'s Mot. for Leave to File Supplement at 1. The EOP responds to the substance of Plaintiff's supplement with the arguments that the "new evidence" is actually at least twenty-five years old and that it is not particularly relevant or helpful to the issue before this Court. *See* Def.'s Resp. to Supplement at 2. Plaintiff offers no justification for her tardy submission of this "new evidence", all of which appears to have been available on the public record for decades. Furthermore, the additional legislative history she provides is limited in its usefulness. *See* discussion in text *infra*.

sue, but neither case binds this Court, and more significantly, the two cases reach opposite conclusions.[5] In *Alexander v. FBI*, 971 F.Supp. 603 (D.D.C.1997), Judge Royce Lamberth determined that the Office of Personal Security ("OPS") and the Office of Records Management ("ORM"), subsets of the EOP, are *not* exempt from the Privacy Act. *See id.* at 606–07. Judge Lamberth reached this conclusion based on the rationale that "the concerns of FOIA and the Privacy Act are quite different" and that, as a result, the justification which excludes the OPS and ORM from FOIA does not apply equally to the Privacy Act. *Id.* at 607. Judge Lamberth explained:

> When passing FOIA. Congress was addressing the need for individuals to have access to government information. When passing the Privacy Act, Congress was addressing the need for individuals to have protection for their privacy concerns. In interpreting the word "agency" to exclude, under FOIA, the immediate staff of the President, the courts recognize, as Congress did, that the access provided by FOIA must be limited. However, no court has found, and there is no evidence that the privacy protections provided by Congress in the Privacy Act must also be necessarily limited. Through the several exceptions to the restrictions on information covered by the Privacy Act, the President and those who work for the President will always have access necessary for the many executive decisions. Thus there is no need to ignore the plain language of the stat-

ute and limit the word "agency" as has been done under FOIA.

*Id.* at 606–07. Following the district court's decision in *Alexander*, the EOP, on behalf of the OPS, filed an Emergency Petition for Writ of Mandamus with the Court of Appeals for the D.C. Circuit. *See In re Executive Office of the President*, 215 F.3d 20 (D.C.Cir.2000). The Court of Appeals declined to issue the writ, stating that "District Court decisions do not establish the law of the circuit, nor, indeed, do they even establish 'the law of the district' .... The District Court's view on this matter will be subject to review on appeal following final judgment in this case." *Id.* at 24–25 (internal citations omitted). Because the Court of Appeals declined to rule on the issue at that point, the decision in *Alexander* does not provide binding precedent as to whether the OPS and ORM, as units within the EOP, are subject to the Privacy Act.

In contrast, in *Barr v. Executive Office of the President*, No. 99–1695, 2000 WL 33539396 (D.D.C. August 9, 2000), an unpublished memorandum opinion,[6] Judge June L. Green considered the reasoning employed in *Alexander* and rejected it, holding instead that to subject the White House Office to the terms of the Privacy Act "raises constitutional concerns, including separation of powers and Article II confidentiality." *Barr v. Executive Office of the President*, No. 99–1695, 2000 WL 33539396 *2. Applying the rules of construction that require a statute to "first be construed to avoid doubts of constitutionality" and further noting that "Congress, in enacting legislation restricting presidential

---

**5.** As noted above, this Court recently considered a third case on this issue. *See supra* note 2; *Sculimbrene v. Reno*, No. 99–2010 (D.D.C. Feb. 16, 2001) (CKK).

**6.** The Court is aware that, as an unpublished opinion, the opinion in *Barr* carries no prece-

dential weight. *See* D.C.Cir. Rule 28(c). Given the paucity of precedent available on the present issue, however, the Court finds the reasoning in *Barr* to be particularly instructive.

action, must make its intent clear," Judge Green determined that by borrowing from FOIA's definition. Congress has not clearly extended the terms of the Privacy Act to the White House Office. *Id.* at **2– 3 (citing *Feltner v. Columbia Pictures Television*, 523 U.S. 340, 345, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) and *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C.Cir. 1991) respectively). Thus, the *Barr* court concluded that "[a]s the Privacy Act borrows the FOIA definition, it fairly borrows the exceptions thereto as provided in legislative history and by judicial interpretation," and excluded the White House Office from the terms of the Privacy Act. *Id.* at *3.

In the only other decision on point, the United States District Court for the Western District of Virginia rejected the *Alexander* court's reasoning and reached a conclusion in accordance with *Barr. See Falwell v. Executive Office of the President*, 113 F.Supp.2d 967 (W.D.Va.2000). The *Falwell* court rested its determination on the simple fact that "the Privacy Act expressly adopts the definition of agency as set forth in FOIA" and, as a result, "FOIA's definition and its judicial interpretation control the outcome in this case." *Id.* at 969. In part, the *Falwell* court relied upon a decision from the United States Court of Appeals for the District of Columbia Circuit issued after Judge Lamberth's decision in *Alexander. See Dong v. Smithsonian Institution*, 125 F.3d 877, 878–79 (1997) (holding that the Smithsonian is not an "agency" subject to the Privacy Act because it is not treated as an "agency" under FOIA). The *Falwell* court neglected to point out, however, that the *Dong* court's determination to exclude the Smithsonian from the Privacy Act ultimately rested upon the plain language of FOIA, while the EOP's argument for exclusion from the Privacy Act looks beyond the plain language and relies instead upon

the legislative history and judicial interpretations of FOIA's definition of "agency". *See Dong*, 125 F.3d at 879; *Falwell*, 113 F.Supp.2d at 969; 5 U.S.C. § 552(f).

The *Falwell* court also relied on *Rushforth v. Council of Economic Advisers*, 762 F.2d 1038 (D.C.Cir.1985), another D.C. Circuit case, which was cited, but distinguished, by the *Alexander* court. Specifically, the *Falwell* court cited *Rushforth* for the proposition that FOIA definitions, when incorporated into other statutes, apply exactly as they do under FOIA, inclusive of judicial interpretations. *See Falwell*, 113 F.Supp.2d at 969. Applying the FOIA definition of "agency" to the Sunshine Act, the *Rushforth* court held that "inasmuch as the Council of Economic Advisors is not an agency for FOIA purposes, it follows of necessity that the CEA is, under the terms of the Sunshine Act, not subject to that statute either ... [because] the Sunshine Act expressly incorporates the FOIA definition of agency." *Rushforth*, 762 F.2d at 1043. The language in *Rushforth* gives the impression that the D.C. Circuit applied the FOIA definition of "agency" to the Sunshine Act exactly as the definition applies in FOIA. If the same logic were applied in the instant case, the White House Office would not be subject to the terms of the Privacy Act. The *Alexander* court distinguished *Rushforth*, however, on the basis that FOIA and the Sunshine Act serve parallel purposes, while FOIA and the Privacy Act do not. *See Alexander*, 971 F.Supp. at 607.

To further its interpretation of the Privacy Act, the EOP argues, as it did in *Barr*, that the application of the Privacy Act to the President raises "substantial separation of powers concerns." EOP's Mem. at 26. After emphasizing that statutes must be construed so as to avoid constitutionally difficulties, *see id.* (quoting *Almendarez–Torres v. United States*, 523

U.S. 224, 237, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)), the EOP argues that to include the White House Office under the terms of the Privacy Act might amount to an unconstitutional interpretation. *See* EOP's Mem. at 26–27. In particular, the EOP warns that extending the Privacy Act to the White House Office would dramatically curtail the President's authority to keep and use records without public disclosure. *See id.* at 27 (citing 5 U.S.C. § 552a(b), (c), (d), (e)(1), (e)(3), (e)(4), (e)(11)). Because "the confidentiality of Presidential communications" lies on "constitutional underpinnings," the EOP argues that such a result would contravene the Constitution. *Id.* at 28 (quoting *United States v. Nixon*, 418 U.S. 683, 705–06, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

Plaintiff declares that the EOP's constitutional concerns are "throw away arguments" and insists that the Privacy Act actually enhances the ability of the President and close presidential advisors to maintain confidentiality. *See* Pl.' Opp'n at 16. Notwithstanding Plaintiff's opposition, the Court notes that there is merit to the EOP's constitutional argument. Exclusion of the White House Office is a fair construction of the terms of the Privacy Act, and that exclusion properly avoids constitutional questions. Accordingly, these prudential considerations figure into the Court's analysis and buttress the EOP's position.

In her Complaint and in her opposition to the EOP's motion, Plaintiff contends that White House officials have "admitted" that the Privacy Act applies in this situation. *See* Compl. ¶¶ 9–12; Pl.'s Opp'n at 12–15. In particular, Plaintiff notes that, during a deposition in the *Alexander* case, a former Associate White House Counsel "admitted" that, "[t]o the extent that the Privacy Act applied to what I was doing, then I had to comply with it." *See* Pl.'s Opp'n at 13. Plaintiff also refers the Court to (1) the deposition testimony of the ORM Director, including statements that the ORM was briefed on the scope of the Privacy Act, *see id.* at 13–14; (2) a memorandum from the Personnel Management Division concerning Act's application in that office, *see id.* at 14;[7] and (3) statements from the White House Press Secretary regarding the application of the Privacy Act to Congress and the White House, *see id.* at 14–15.[8]

Preliminarily, the Court notes that these allegations turn on documents that are outside the pleadings and are, accordingly, unfit for consideration under Rule 12(b). Nonetheless, a brief review demonstrates that they offer little factual or legal support for Plaintiff's position. Notably, virtually all of the statements are taken out of context and are not the clear "admissions" Plaintiff makes them out to be. *See* EOP's Reply at 17–18. Furthermore, in making these arguments, Plaintiff fails to point to any statutory or judicial authority which instructs a court to consider party admissions in conjunction with its interpretation of a statute. While this Court is well aware that "[w]hen faced with a problem of statutory construction, [the D.C.

---

7. The EOP maintains that the Personnel Management Division is not within the White House Office and that, accordingly, the views of its acting director are entirely irrelevant to this question. *See* EOP's Reply at 18.

8. Plaintiff also alleges that, during the *Alexander* litigation, the EOP itself made an additional admission with regard to the applica-

tion of the Privacy Act. *See* Pl.'s Opp'n at 15. A cursory examination of the statement in question, however, makes clear that the EOP admitted nothing. To the contrary, the statement merely demonstrates that the EOP, constrained by the prior ruling against it, strove to apply the law of the case to the facts at issue. *See id.*

Circuit] shows great deference to the interpretation given the statute by the officers or agency charged with its administration." *Soucie v. David,* 448 F.2d 1067, 1075 n. 29 (D.C.Cir.1971), the comments relied upon by Plaintiff as "admissions" do not appear to fall within the scope of agency interpretation.

To the contrary, the EOP notes that its Privacy Act interpretation, under which the White House Office is exempt from coverage, comports with the interpretation adopted by every presidential administration since the Privacy Act's enactment. *See* EOP's Reply at 13. Thus, even if these various statements are construed as "admissions," they do not appear to constitute agency interpretations for the purpose of interpretational deference. As a result, the statements are largely irrelevant to the Court's present task of statutory construction, which is a matter of law, not fact.

In her Supplemental Opposition, Plaintiff also directs the Court to congressional debate and committee reports related to the enactment of the Privacy Act. *See generally* Pl.'s Supplemental Opp'n. In general terms, this additional material is offered to show the reasons for enacting the Privacy Act, in the hope that these reasons will provide some guidance to the Court's interpretation of the definition of "agency" provided in Section 552a. Plaintiff argues that this legislative material supports her position that the word "agency" includes the White House Office because the Privacy Act "was enacted in response to the abuses of President Nixon and his closest advisors." *Id.* at 2 (citing the Wall Street Journal). In Plaintiff's view, the additional legislative history establishes a clear link between the Watergate scandal and the enactment of the Privacy Act. That link, argues Plaintiff, demonstrates Congress's intent to subject all portions of the Executive Branch to the Privacy Act's terms. *See id.*

Notwithstanding Plaintiff's argument, the very legislative history she provides to the Court indicates that, "[a]lthough many witnesses have said that the disclosures of Watergate highlighted the need for this bill, the committee report makes clear that the bill is based on long-standing complaints of governmental threats to privacy which will haunt Americans in the years ahead . . . ." Supplemental Opp., Ex. 1 at 8 (copy of 120 CONG. REC. S36891 (November 21, 1974) (statement of Senator Ervin)). The contrast between Senator Ervin's comments and Plaintiff's interpretation of the legislative history illustrates the wide spectrum of views that the history reflects. Because it is replete with such conflicting and irreconcilable opinions, the legislative history upon which Plaintiff relies is limited in its utility.

This conclusion is understandable and is not unexpected given that this supplemental material consists of debate and discussion on the floor and in committees of both houses. During such debate and discussion, Members of Congress express a variety of considerations, many of which find no place in the conference report or the final version of a statute. More significantly, the comments in these materials provide little guidance on the specific interpretative issue currently before the Court because they merely reiterate the term "agency" without offering more detailed elaboration as to its meaning. Notably too, the legislative history for FOIA also includes references to the Watergate abuses. *See* EOP Resp. to Pl.'s Supplemental Opp'n. at 16–17 (citing and quoting legislative history of FOIA). These observations significantly undercut Plaintiff's argument that the Watergate references in the Privacy Act's legislative history pro-

vide a basis for distinguishing between the uses of the term "agency" in the two Acts.

In light of all of the considerations described above, the Court concludes that the terms of the Privacy Act do not apply to the White House Office. The Court bases this conclusion, in large part, on the fact that Congress, neither in the text of the Privacy Act, nor in its legislative history, indicates an intention to interpret the term "agency" in any manner other than as it is used in FOIA. By its own terms, the Privacy Act provides that "the term 'agency' means agency as defined in section 552(e) of this title." 5 U.S.C. § 552a. Section 552(e) of Title 5 is a provision in FOIA. *See* 5 U.S.C. § 552(e). There is every indication from the legislative history that the drafters of the Privacy Act, in choosing to apply the FOIA definition of "agency" to the Privacy Act, were cognizant of the Conference Committee Report prepared in connection with the 1974 FOIA Amendments, which specifically provided that "the term [agency] is not to be interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." *See* H.R. CONF. REP. 93–1380 at 15. For example, "the Subcommittee of Government Operations, known as Foreign Operations and Government Information, is the parent subcommittee of both bills, the Freedom of Information Act and now this new Privacy Act." *See* 120 CONG. REC. H36645 (November 20, 1974) (statement of Rep. Erlenborn). The comments of Congressman Erlenborn, a House Manager on the Joint Committee of Conference on the 1974 FOIA Amendments, further indicate that the Subcommittee was aware of the competing concerns of FOIA and the Privacy Act. *See id.* ("It has been quite an effort to walk a tightrope in the one bill to provide the maximum access to information on the part of the public, and in the

other bill to limit access to protect an individual's privacy."); H.R. CONF. REP. NO. 93–1380 at 5 (1974). Yet, despite these competing concerns. Congress chose to define "agency" in the Privacy Act according to the terms used in FOIA and provided no indication that it expected the provisions to be interpreted differently.

The Supreme Court has stated clearly that "where, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *See Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). Such a rule seems particularly appropriate where, as in this case, congressional consideration of the Privacy Act followed closely on the heels of congressional consideration of the 1974 FOIA Amendments. In its consideration of those amendments, Congress displayed an understanding of the judicial interpretation applied to the term "agency" and indicated further its intent to prevent the term from applying to the personal advisors to the President. *See* 120 CONG. REC. H36645 ("[I]t is rather fitting that [the Privacy Act] comes to the floor on the same day that we considered a motion to override and have overridden the President's veto on the Freedom of Information Act."); H.R. CONF. REP. NO. 93–1380 at 5 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6923 ("With respect to the term 'Executive Office of the President' [in FOIA] the conferees intend the result reached in *Soucie v. David,* 448 F.2d 1067 (C.A.D.C.1971). The term is not to be interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President."); S.

**20**

CONF. REP. NO. 93–1200, at 15 (1974) (same).

Given these considerations, there seems little reason for this Court, while interpreting legislative terminology and congressional intent, to formulate its own policy analysis and concerns when no such similar concerns were expressed by Congress itself. Stated otherwise, absent express congressional guidance, the mere fact that the Privacy Act and FOIA may reflect competing concerns for privacy and public access cannot control the Court's interpretation of the term "agency" as it is used in the Privacy Act. The term "agency," as it is defined in 5 U.S.C. § 552(f), has been interpreted clearly to exclude the White House Office. *See Kissinger*, 445 U.S. at 156, 100 S.Ct. 960; *Nat'l Sec. Archive*, 909 F.2d at 545. The Privacy Act expressly adopts that definition. *See* 5 U.S.C. § 552a. Accordingly, the term "agency," as defined in Section 552a of the Privacy Act, does not apply to the White House Office. Based on this conclusion, the Court shall dismiss this Privacy Act suit.

## IV. CONCLUSION

Having considered the EOP's motion, Plaintiff's opposition, the EOP's reply, the supplemental materials submitted by both parties, and the applicable law, the Court shall grant the EOP's motion to dismiss because the White House Office is not subject to the terms of the Privacy Act. An appropriate Order accompanies this Memorandum Opinion.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is, this 12 of March, 2001, hereby

**ORDERED** that Defendant Executive Office of the President's Motion to Dismiss [# 4] is GRANTED; it is further

**ORDERED** that Plaintiff Paula Jones' Cross Motion for Partial Summary Judgment [# 8] is DENIED AS MOOT; it is further

**ORDERED** that the Complaint is dismissed and that this is a final, appealable Order.

**SO ORDERED.**