**Rodney R. SWEETLAND III, Appellant,**

v.

**Gary J. WALTERS, Chief Usher, Executive Residence, The White House, Appellee.**

**No. 93–5411.**

United States Court of Appeals, District of Columbia Circuit.

Argued January 10, 1995.

Decided August 1, 1995.

---

Rodney R. Sweetland III argued the cause and filed the briefs pro se.

Matthew M. Collette, Atty., U.S. Dept. of Justice, with whom Frank W. Hunger, Asst. Atty. Gen., Eric H. Holder, Jr., U.S. Atty., and Mark B. Stern, Atty., U.S. Dept. of Justice, were on the brief, argued the cause for appellee. Elizabeth A. Pugh and Steve Frank, Attys., U.S. Dept. of Justice, entered appearances for appellee.

Before BUCKLEY, RANDOLPH, and TATEL, Circuit Judges.

Opinion PER CURIAM.

## PER CURIAM.

Rodney R. Sweetland III filed suit against Gary J. Walters, Chief Usher of the Executive Residence of the President, under the Freedom of Information Act. The district court dismissed the complaint for lack of subject-matter jurisdiction as well as for failure to state a claim upon which relief could be granted. Because we agree that Mr. Sweetland has failed to state a proper claim, we affirm the judgment.

## I. BACKGROUND

Mr. Sweetland, an attorney, represented a former Assistant Chef in the Executive Residence kitchen who filed an employment discrimination suit arising out of his service in that position. On March 30, 1993, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1994), Mr. Sweetland asked the Executive Residence for information concerning the Residence's kitchen staffing and budgets. Mr. Walters responded with a letter in which he supplied very general answers to some of Mr. Sweetland's questions while asserting that the Executive Residence was not subject to FOIA. Unsatisfied, Mr. Sweetland filed suit in the U.S. District Court for the District of Columbia seeking declaratory and injunctive relief. The district court held that the Executive Residence was not an agency for the purposes of FOIA and, on that basis, granted Mr. Walters' motion to dismiss on the grounds that the court lacked jurisdiction and that Mr. Sweetland had failed to state a claim on which relief could be granted. Mr. Sweetland appeals the dismissal of his complaint.

## II. DISCUSSION

FOIA directs agencies, as defined therein, to make certain information available to the public. 5 U.S.C. § 552. Mr. Sweetland argues that the district court erred when it concluded that the Executive Residence was not an "agency" for the purposes of FOIA. As amended in 1974, FOIA provides:

> For the purposes of this section, the term "agency" ... includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (*including the Executive Office of the President*), or any other independent regulatory agency.

5 U.S.C. § 552(f) (emphasis added). The Supreme Court has held that

> "the President's immediate personal staff or units in the Executive Office [of the

854

President] whose sole function is to advise and assist the President" are not included within the term "agency" under the FOIA. *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 156, 100 S.Ct. 960, 971, 63 L.Ed.2d 267 (1980) (quoting H.R.Conf.Rep. No. 1380, 93d Cong.2d Sess. 15 (1974)). Although the Executive Residence is not a unit within the Executive Office of the President ("EOP"), *see* Reorganization Plan No. 1 of 1977, *reprinted in* 3 U.S.C. Ch. 2 note at 431, 434 (1994) (Message of the President) (listing units within the EOP), we believe it is analogous to an EOP unit for purposes of a FOIA analysis because the Residence staff, like units within the EOP, is responsible directly to the President and assists him by performing whatever duties he may prescribe. *See* 3 U.S.C. § 105(b)(1) (1994). Thus, we rely on FOIA cases dealing with the responsibilities of EOP units in determining whether the Executive Residence is to be treated as an agency within the meaning of FOIA.

As we pointed out in *Meyer v. Bush,* 981 F.2d 1288 (D.C.Cir.1993), every one of the EOP units that we found to be subject to FOIA has wielded substantial authority independently of the President. *Id.* at 1292 (discussing cases). For example, in *Soucie v. David,* 448 F.2d 1067 (D.C.Cir.1971), we held that the Office of Science and Technology was subject to FOIA because it had independent authority to evaluate federal scientific programs, initiate and support research, and award scholarships. *See id.* at 1075; *Rushforth v. Council of Economic Advisers,* 762 F.2d 1038, 1041 (D.C.Cir.1985). Similarly, in *Pacific Legal Foundation v. Council on Environmental Quality,* 636 F.2d 1259 (D.C.Cir. 1980), we held that the Council on Environmental Quality—an entity within the EOP with power to coordinate federal environmental programs and issue guidelines and regulations to federal agencies—was an agency for the purposes of FOIA. *Id.* at 1263.

By contrast, in cases involving units of the Executive Office that lacked substantial independent authority, we have consistently rejected the claim that they were subject to FOIA. In *Rushforth,* for example, we concluded that because the Council of Economic

Advisors had no regulatory power under its implementing statute or controlling executive orders, it was not an agency under FOIA. *Rushforth,* 762 F.2d at 1043. More recently, we held that President Reagan's Task Force on Regulatory Relief was exempt from FOIA because it lacked "substantial independent authority to direct executive branch officials." *Meyer,* 981 F.2d at 1297 (internal quotation marks omitted).

The staff of the Executive Residence exercises none of the independent authority that we found to be critical in holding other entities that serve the President to be agencies subject to FOIA. This is self-evident from a description of the staff and its duties to which the parties have referred us:

> The Executive Residence staff provides for the operation of the Executive Residence. A staff of 36 domestic employees accomplish general housekeeping, prepare and serve meals, greet visitors, and provide services as required in support of official and ceremonial functions. A staff of 33 tradespersons, including plumbers, carpenters, painters, ... electricians ... and operating engineers ... maintains and makes repairs, minor modifications, and improvements to the 132 rooms and the mechanical systems, and provides support for official and ceremonial functions. This staff includes four florists, four curators, and four calligraphers.

Report of Senate Appropriations Committee, S.Rep. No. 286, 103d Cong., 2d Sess. 51 (1994). This catalogue of the Residence staff's functions demonstrates that it is exclusively dedicated to assisting the President in maintaining his home and carrying out his various ceremonial duties. The staff does not oversee and coordinate federal programs, as does the Office of Science and Technology, or promulgate binding regulations, as does the Council on Environmental Quality. In short, neither Congress nor the President has delegated independent authority to these employees.

Mr. Sweetland insists, however, that Congress has imposed on certain employees of the Executive Residence duties that "are not mutable at the whim of the President." Reply Brief at 12 (citing 3 U.S.C. §§ 109 & 110

(1994)). We disagree. Even though the cited sections of the U.S.Code impose relatively specific obligations on the Residence staff with respect to the public property and furniture in the White House, they also indicate that these duties must be carried out "under the direction of the President," 3 U.S.C. § 109, or "with the approval of the President." 3 U.S.C. § 110. Contrary to Mr. Sweetland's assertions, these provisions do not empower the Executive Residence staff to manage the President's home without regard to the President's wishes. Nor are they inconsistent with section 105(b)(1)'s general command that such employees "shall perform such official duties as the President may prescribe." 3 U.S.C. § 105(b)(1).

Mr. Sweetland argues, nevertheless, that exempting the Executive Residence would frustrate the public policy objectives of FOIA without providing any offsetting benefits. Again, we disagree. FOIA was intended to enlighten citizens as to how they are governed. *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775, 109 S.Ct. 1468, 1482–83, 103 L.Ed.2d 774 (1989) (noting that "core purpose" of FOIA was to contribute "significantly to public understanding *of the operations or activities of the government*") (emphasis in original). Absent explicit instructions to the contrary, we will not presume that Congress intended to impose on members of the President's personal staff so unseemly a duty as revealing the intimate details of the management of his home, particularly when those details will often be closely connected to his duties as head of State as well as head of Government.

Accordingly, we hold that the staff of the Executive Residence is not an agency as defined in FOIA; and because it is not subject to FOIA's reporting requirements, Mr. Sweetland's complaint has failed to state a claim upon which relief could be granted. *Cf. Haddon v. Walters*, 43 F.3d 1488, 1490 (D.C.Cir.1995) (plaintiff failed to state claim upon which relief could be granted because statute on which he relied did not apply to defendant). While we cannot agree that the district court lacked subject-matter jurisdiction, *id.* (district court has jurisdiction over substantive claims arising under laws of United States); *see also Kleiman v. Dep't of Energy*, 956 F.2d 335, 339 (D.C.Cir.1992) (same), we nonetheless affirm the judgment of the district court dismissing Mr. Sweetland's complaint for failure to state a legally cognizable claim.

### III. CONCLUSION

Because the Executive Residence is not an "agency" for the purposes of FOIA, it is not obliged to provide the information sought by Mr. Sweetland. Accordingly, we affirm the district court's judgment dismissing the complaint.

*So ordered.*