# Applicability of the Presidential Records Act to the White House Usher's Office

Because the White House Usher's Office is part of the President's "immediate staff" or, alternatively, would be "a unit . . . of the Executive Office of the President whose function is to advise and assist the President," any documentary materials "created or received [by the Office] in the course of conducting activities which relate to or have an effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President" constitute "Presidential records" under the Presidential Records Act, 44 U.S.C. § 2201(2).

July 13, 2007

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked whether the Usher's Office is subject to the recordkeeping requirements of the Presidential Records Act ("PRA" or "Act"), 44 U.S.C. §§ 2201–2207 (2006). As discussed below, we believe that, for the purposes of the PRA, the Usher's Office is either part of the "immediate staff" of the President or is "a unit . . . of the Executive Office of the President whose function is to advise and assist the President." *Id.* § 2201(2). Therefore, records of the Usher's Office are subject to the Act to the extent that they are "created or received . . . in the course of conducting activities which relate to or have an effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President." *Id.*

## I.

You have informed us that the Usher's Office is generally responsible for managing and operating the Executive Residence of the President—a function that includes preparing and serving meals to the First Family and their guests, performing housekeeping and maintenance services on the Executive Residence, providing curatorial services, greeting visitors, and assisting the President in his performance of certain official and ceremonial duties. Letter for Steven G. Bradbury, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from Fred F. Fielding, Counsel to the President at 1 (June 6, 2007). In performing its functions, the Usher's Office generates and receives various paper and electronic materials, including "the daily diary of the First Family, First Family personal access lists, event guest lists, equipment, staffing, and food/beverage orders and invoices, and Executive Residence project work orders and invoices." *Id.* Furthermore, the Usher's Office is operationally part of the Executive Residence and supervises the staff of the Executive Residence. Because the Executive Residence is an entity within the Executive Office of the President, *see* Memorandum for Gary Walters, Chief Usher of the Executive Residence, from Andrew H. Card, Jr., White House Chief of Staff (June 11, 2002), the Usher's Office is as well.

Congress enacted the PRA in 1978 in order to preserve and make publicly available certain official records generated or received by the President and certain individuals in his service. *See* H.R. Rep. No. 95-1487, at 2 (1978). Accordingly, the Act mandates the preservation of "Presidential records," which are defined as:

> documentary materials, or any reasonably segregable portion thereof, created or received by the President, his immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise and assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President.

44 U.S.C. § 2201(2). Excluded from the definition of presidential records are "diaries, journals, or other personal notes . . . which are not prepared or utilized for, or circulated or communicated in the course of, transacting Government business." *Id.* § 2201(3)(A). Also excluded are "materials relating to private political associations," *id.* § 2201(3)(B), "materials relating exclusively to the President's own election[,] . . . and materials directly relating to the election of a particular individual or individuals," *id.* § 2201(3)(C), that have "no relation to or direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President," *id.* § 2201(3)(B), (3)(C).

The PRA also explicitly excludes from its coverage any "documentary materials" that are "official records of an agency," as the term "agency" is defined in the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(f)(1) (2006). 44 U.S.C. § 2201(2)(B)(i). Such records are covered instead by FOIA and the Federal Records Act ("FRA"), 44 U.S.C. §§ 3101–3107, 3301–3314 (2006), which operate in tandem to complement the PRA. Specifically, the FRA requires federal agencies to preserve certain agency records and FOIA requires federal agencies to make such records publicly available subject to application of various statutory exemptions. As the Court of Appeals for the D.C. Circuit has explained, "the coverage of the FRA is coextensive with the definition of 'agency' in the FOIA . . . . As a result, . . . '[t]he FRA describes a class of materials that are federal records subject to its provisions, and the PRA describes another, mutually exclusive set of materials that are subject to a different . . . regime.'" *Armstrong v. Exec. Office of the President*, 90 F.3d 553, 556 (D.C. Cir. 1996) (quoting *Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1293 (D.C. Cir. 1993)). Congress applied the PRA to the President and those Executive Office of the President ("EOP") entities that are not "agencies" subject to FOIA and the FRA, *see* H.R. Rep. No. 95-1487, at 3 (1978), and the Supreme Court has held that FOIA—and by implication the FRA—does not apply to "'the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980) (quoting H.R. Conf. Rep. No. 93-1380, at 15

(1974)) (legislative history of 1974 amendments to FOIA); *Armstrong*, 1 F.3d at 1295; *see also Meyer v. Bush*, 981 F.2d 1288, 1293 (D.C. Cir. 1993).

## II.

As discussed below, we conclude that records created or received by the Usher's Office are covered by the PRA because the Usher's Office must be viewed either as part of the "immediate staff" of the President or as "a unit . . . of the Executive Office of the President whose function is to advise and assist the President." 44 U.S.C. § 2201(2).

## A.

The PRA provides no definition of the President's "immediate staff," and we are aware of no judicial decisions interpreting the term in the context of the PRA. In enacting the PRA, however, Congress specifically relied upon and incorporated the conference report on the 1974 amendments to FOIA, which had become law only four years earlier. *See* H.R. Rep. No. 95-1487, at 11 (1978) (the term "Executive Office of the President," to which FOIA applies, "'is not interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President'") (quoting H.R. Conf. Rep. No. 93-1380, at 15 (1974)). Thus, in determining whether the Usher's Office is part of the President's "immediate staff" for purposes of the PRA, we look to how courts have interpreted the phrase "immediate personal staff" of the President in cases involving the applicability of FOIA. *See Smith v. City of Jackson,* 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.").

No court has precisely described the composition of the President's "immediate staff" or "immediate personal staff." The D.C. Circuit, however, has indicated that in the FOIA context "immediate personal staff" includes "at least those . . . individuals employed in the White House Office." *Meyer*, 981 F.2d at 1293 n.3. The court explained that "[p]roximity to the President, in the sense of continuing interaction, is surely in part what Congress had in mind when it exempted the President's 'immediate personal staff' [from FOIA's requirements] without requiring a careful examination of its function." *Id*. at 1293. Like the White House Office staff, employees of the Usher's Office directly interact with the President on a continuing basis. The Usher's Office manages the President's official residence and is closely involved in various daily activities—including preparing the President's food, greeting his guests, and helping him perform certain official and ceremonial functions.

Moreover, the Executive Residence—which includes the Usher's Office—and the White House Office are treated similarly under federal law. Congress has granted the President broad discretion in hiring the employees of both units. The President is specifically authorized to "appoint and fix the pay of employees" in the White House Office and the Executive Residence "without regard to any other provision of law regulating the employment or compensation of persons in the Government service." 3 U.S.C. §§ 105(a)(1), (b)(1) (2006). These provisions reflect Congress's judgment that the President should have complete discretion in hiring staff with whom he interacts on a continuing basis. *See Haddon v. Walters*, 836 F. Supp. 1, 3 (D.D.C. 1993) ("Attempts to limit the President's power to hire and fire those who work in his own home must be carefully and thoughtfully drawn. We speak here of individuals who occupy positions in close physical proximity to the President."); *see also* S. Rep. No. 95-868, at 7 (1978) (explaining that section 105 of title 3 grants the President "total discretion in the employment, removal, and compensation (within the limits established by this bill) of all employees" in both the White House Office and the Executive Residence). In addition, employees of both the White House Office and the Executive Residence must "perform such official duties as the President may prescribe." 3 U.S.C. §§ 105(a)(1) & (b)(1). Due to the similar proximity to the President shared by the White House Office and the Usher's Office, we conclude that the Usher's Office falls within the President's "immediate staff" for purposes of the PRA.

## B.

Alternatively, if the staff of the Usher's Office were not viewed as part of the "immediate staff" of the President, we believe that it would constitute a "unit . . . of the Executive Office of the President whose function is to advise and assist the President." 44 U.S.C. § 2201(2). This phrase, too, stems from the conference report on the 1974 Freedom of Information Act Amendments, upon which Congress specifically relied when it enacted the PRA. *See* H.R. Conf. Rep. No. 95-1487, at 11 (1978) (FOIA "'is not interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President'") (quoting H.R. Rep. No. 93-1380, at 15 (1974)). Congress intended for the PRA to apply to "all White House and Executive Office records, except those of a purely private or nonpublic nature, which, as a consequence of the Conference Report language, fall *outside* the scope of the FOIA because they are not agency records." H.R. Conf. Rep. No. 95-1487, at 11.

The D.C. Circuit has held that the staff of the Executive Residence is not an agency under FOIA because the sole function of the Executive Residence is to advise and assist the President. *See Sweetland v. Walters*, 60 F.3d 852, 853–55 (D.C. Cir. 1995). The court explained that it reached this decision based on the fact that the Executive Residence did not exercise any substantial authority

independent of the President. *Id.* at 854 ("[E]very one of the EOP units that we found to be subject to FOIA has wielded substantial authority independently of the President. . . . The staff of the Executive Residence exercises none of the independent authority that we found to be critical . . . ."). Because the Executive Residence includes the Usher's Office, under *Sweetland* the Usher's Office is likewise exempt from FOIA as part of an EOP unit whose sole function is to advise and assist the President.

The decision in *Sweetland* contains no discussion of whether the staff of the Executive Residence functions to "advise" the President, strongly suggesting that as long as a unit of the EOP exercises no substantial authority independently of the President, it should be classified as a unit that functions to advise and assist the President for purposes of being exempt from the FRA and FOIA—and, by implication, being subject to the PRA—regardless of whether the unit in fact "advises" the President on official or ceremonial matters. However, even if the PRA requires that a unit of the EOP both "advise" and "assist" the President in order to be covered by the Act, the Usher's Office would still satisfy this test. First, the Usher's Office certainly assists the President. The core functions of the Usher's Office include "assisting the President in maintaining his home and carrying out his various ceremonial duties." *Sweetland*, 60 F.3d at 854. Second, the Usher's Office also advises the President in carrying out his ceremonial duties. For example, the Usher's Office advises the President on what food to serve and what formalities to follow at an official White House state dinner depending, for example, on cultural sensitivities and differences. Furthermore, the Chief Usher advises the President by serving on the Committee for the Preservation of the White House, which reports to the President recommendations regarding, *inter alia*, the articles of furniture, fixtures, and decorative objects which shall be used or displayed in certain areas of the White House. Exec. Order No. 11145, §§ 2–3, 3 C.F.R. 123, 123–24 (1964 Supp.).

## III.

Because the Usher's Office is thus part of the President's "immediate staff" or, alternatively, would be "a unit . . . of the Executive Office of the President whose function is to advise and assist the President," any documentary materials "created or received [by the Office] in the course of conducting activities which relate to or have an effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President" constitute "Presidential records." 44 U.S.C. § 2201(2). As noted above, we understand that the Usher's Office does create and receive documentary materials in the course of conducting activities related to the President's various official and ceremonial duties. Such materials constitute "Presidential records" under the PRA, and, consequently, the Usher's Office is

responsible for complying with the relevant recordkeeping provisions of the Act with respect to those materials. *See id.* § 2203.

STEVEN G. BRADBURY
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*
