# Whether the Office of Administration Is an "Agency" for Purposes of the Freedom of Information Act

The Office of Administration, which provides administrative support to entities within the Executive Office of the President, is not an agency for purposes of the Freedom of Information Act.

August 21, 2007

MEMORANDUM OPINION FOR THE DEPUTY COUNSEL TO THE PRESIDENT

Your Office has asked whether the Office of Administration ("OA"), which provides administrative support to entities within the Executive Office of the President ("EOP"), is an "agency" for purposes of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000). For the reasons discussed below, we conclude that it is not.

## I.

The Office of Administration is entirely a presidential creation, and its duties are confined to the EOP. It was created as an entity within the EOP by Reorganization Plan No. 1 of 1977, § 2, 5 U.S.C. app. 1 (2000) ("Reorganization Plan"), which provided that OA "shall be headed by the President" and "shall provide components of the Executive Office of the President with such administrative services as the President shall from time to time direct." Further presidential direction regarding OA's responsibilities is set forth in Executive Order 12028, 3 C.F.R. 161 (1977 Comp.) (as amended by Exec. Order No. 12122, 3 C.F.R. 365 (1979 Comp.); Exec. Order No. 12134, 3 C.F.R. 385 (1979 Comp.)). Section 3(a) of Executive Order 12028 states that OA "shall provide common administrative support and services to all units within the Executive Office of the President, except for such services provided primarily in direct support of the President." For those services provided "primarily in direct support of the President," OA "shall, upon request, assist the White House Office in performing its role of providing those administrative services." *Id.* § 3(a). Section 3(b) provides that OA's administrative support and services "shall encompass all types of administrative support and services that may be used by, or useful to, units within the Executive Office of the President," including, but not limited to, "personnel management services"; "financial management services"; "data processing"; "library, records, and information services"; and "office services and operations, including[] mail, messenger, . . . graphics, word processing, procurement, and supply services." *Id.* § 3(b) (as amended by Exec. Order No. 12134 (transferring responsibility for printing and duplication services to the Department of the Navy)).

The President heads OA and appoints its Director, who, as the chief administrative officer of OA, is "responsible for ensuring that [OA] provides units within the

[EOP] common administrative support and services." *Id*. § 2. Subject to the President's "direction or approval," the Director "organize[s] [OA], contract[s] for supplies and services, and do[es] all other things that the President, as head of [OA], might do." *Id*. § 4(a) (as amended by Exec. Order No. 12122). On a day-to-day basis, the Director reports to the Assistant to the President and Deputy Chief of Staff, through the Deputy Assistant to the President for Management, Administration, and Oval Office Operations. In addition, the Director provides advice to the President, through the Deputy Chief of Staff, on matters such as budget and appropriations issues, cyber security and threats, and administrative questions.

## II.

The Freedom of Information Act requires that "[e]ach agency" make available to the public various agency records. 5 U.S.C. § 552. As revised in 1974, the statutory definition of the term "agency" includes "any executive department, military department, Government corporation, Government controlled corporation, or *other establishment in the executive branch of the Government (including the Executive Office of the President)*, or any independent regulatory agency." 5 U.S.C. § 552(f)(1) (emphasis added). In *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980), the Supreme Court relied on the legislative history of this definition to hold that "'the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President' are not included within the term 'agency' under the FOIA." *Id*. at 156 (quoting H.R. Conf. Rep. No. 93-1380, at 15 (1974)). The Court of Appeals for the D.C. Circuit has recognized that, in revising the definition of the term "agency" in 1974, Congress drew on and codified that court's finding in *Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971), that an "agency" included "any administrative unit with substantial independent authority in the exercise of specific functions," including such a unit in the EOP. *See Meyer v. Bush*, 981 F.2d 1288, 1291 (D.C. Cir. 1993) ("As clearly shown by the legislative history, . . . Congress intended to codify our earlier decision . . . in *Soucie v. David*.").

In a series of cases addressing whether an EOP entity is an "agency" for FOIA purposes, the D.C. Circuit has focused on whether the entity possessed "substantial independent authority," and in seeking to resolve that question, has articulated a three-factor test, which was first set out in *Meyer. See id*. at 1293. The test requires consideration of "(1) 'how close operationally the group is to the President,' (2) 'whether it has a self-contained structure,' and (3) 'the nature of its delegat[ed] authority.'" *Armstrong v. Exec. Office of the President*, 90 F.3d 553, 558 (D.C. Cir. 1996) (quoting *Meyer*, 981 F.2d at 1293). Each factor is not "weighed equally"; instead, each "warrants consideration insofar as it is illuminating in a particular case." *Id*. In practice, the D.C. Circuit has placed considerable emphasis on the third factor, closely considering the "nature of its delegated authority" to determine the ultimate question whether the entity exercises "sub-

stantial independent authority" or instead functions solely to advise and assist the President. *Id.*

As explained below, this third factor is dispositive here. Although OA has an organizational structure that would allow it to exercise independent authority should the President so delegate, and although it is not proximate to the President in the same way as the President's personal staff, we believe that the nature of the delegated authority that OA actually exercises is such that OA cannot be said to exercise substantial independent authority in its limited mission of providing administrative assistance solely within the EOP, which itself supports the President. We therefore conclude that OA is not an agency for purposes of FOIA.[1]

## A.

The logical initial inquiry, under both the statutory language and the D.C. Circuit case law, concerns organizational structure, the second of the three factors set out in *Meyer*. As the D.C. Circuit has explained, it "seems very doubtful" that "an entity without a self-contained structure could ever qualify as an agency that exercises substantial independent authority." *Armstrong*, 90 F.3d at 559; *see also Meyer*, 981 F.2d at 1296 ("FOIA, by declaring that only 'establishments in the executive branch' are covered, 5 U.S.C. § 552(e), requires a definite structure for agency status."). In *Armstrong*, the court concluded that the National Security Council ("NSC") had the self-contained structure necessary for a FOIA "agency":

> The NSC staff is not an amorphous assembly from which ad hoc task groups are convened periodically by the President. On the contrary, it is a professional corps of more than 150 employees, organized into a complex system of committees and working groups reporting ultimately to the Executive Secretary. There are separate offices, each responsible for a particular geographic region or functional area, with clearly established lines of authority both among and within the offices.

---

[1] In a prior opinion concluding that White House data entered and stored on OA computers under specified conditions did not qualify as "agency records" under FOIA, we stated that OA, "as a unit within EOP which does not have the sole function of advising and assisting the President, may well be an 'agency' within the meaning of FOIA." Memorandum for Fred F. Fielding, Counsel to the President, from Larry L. Simms, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Applicability of Freedom of Information Act to White House Records Entered and Stored in Office of Administration Computers* at 4 (Feb. 22, 1982). The opinion did not provide any analysis supporting that statement and predated subsequent court decisions, such as *Meyer*, 981 F.2d 1288; *Sweetland v. Walters*, 60 F.3d 852 (D.C. Cir. 1995); and *Armstrong*, 90 F.3d 553. Now that the question is squarely presented and we have occasion to analyze it fully, and in light of the subsequent case law discussed herein, we reject any suggestion that OA is an agency for the purposes of FOIA.

90 F.3d at 560. By contrast, *Meyer* held that the President's Task Force on Regulatory Relief, an ad hoc task force created by President Reagan, was not an agency because it operated out of the Vice President's office and, importantly, lacked a separate staff. *See Meyer*, 981 F.2d at 1296 ("[T]he Task Force's lack of a separate staff is a strong indicator that it was neither an 'establishment' nor an independent actor in the executive branch.").

Like the NSC, OA has a defined hierarchy. The President stands at its head, and a director—who is personally appointed by, and serves at the pleasure of, the President—provides for the Office's day-to-day management. In its Fiscal Year 2008 Congressional Budget Submission, OA reported that it maintains a staff consisting of approximately 225 employees, and it is organized into five different offices, each with its own defined functions, that report to the Director. *See* Executive Office of the President, Office of Administration, Congressional Budget Submission, FY 2008, at OA-3. A court would likely find this to be the kind of "self-contained structure" necessary to characterize OA as an agency for FOIA purposes.[2]

As the D.C. Circuit has explained, however, "while a definite structure may be a prerequisite to qualify as an establishment within the executive branch . . . not every establishment is an agency under the FOIA." *Armstrong*, 90 F.3d at 558 (internal quotations and citations omitted). Even when an office "has a structure sufficiently self-contained that the entity could exercise substantial independent authority . . . [t]he remaining question is whether the [entity] does in fact exercise such authority." *Id*. at 560. Indeed, the reason for considering an entity's organizational structure is to determine whether the entity is even in a position to exercise independently any authority delegated by the President.

## B.

We consider next OA's "proximity" to the President. The D.C. Circuit has explained that "[t]he closer an entity is to the President, the more it is like the White House staff, which solely advises and assists the President, and the less it is like an agency to which substantial independent authority has been delegated." *Armstrong*, 90 F.3d at 558; *see also Meyer*, 981 F.2d at 1293 ("Proximity to the

---

[2] We note that OA is currently governed by regulations suggesting that OA may have considered itself to be an agency for purposes of FOIA. *See* 5 C.F.R. §§ 2502.1–2502.10 (2007). That fact, however, is not significant to our analysis. As the D.C. Circuit explained in *Armstrong*, "[t]he NSC's prior references to itself as an agency are not probative on the question before the court—whether the NSC is indeed an agency within the meaning of the FOIA; quite simply the Government's position on that question has changed over the years." 90 F.3d at 566. The court was referring in part to a 1993 opinion of this Office that applied subsequent legal developments to reverse the prior position of the Office that the NSC was an agency subject to FOIA. *See* Memorandum for Alan Kreczko, Special Assistant to the President and Legal Adviser, NSC, from Walter Dellinger, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Status of NSC as an "Agency" under FOIA* (Sept. 20, 1993). The court in *Armstrong* agreed with the legal conclusion of our 1993 opinion regarding the NSC.

President, in the sense of continuing interaction, is surely in part what Congress had in mind when it exempted the President's 'immediate personal staff' [from the requirements of FOIA] without requiring a careful examination of its function.") (quoting conference committee report relied on in *Kissinger*). Thus, the *Armstrong* court, in holding that the NSC is not an "agency" for purposes of FOIA, explained that the NSC shares an "intimate organizational and operational relationship" with the President. *Armstrong,* 90 F.3d at 560. The NSC is chaired by the President, and its staff is supervised by the Assistant to the President for National Security Affairs ("National Security Adviser"), who "work[s] in close contact with and under the direct supervision of the President." *Id*. Because of this close relationship, the court stated that it would require a "strong showing" on the remaining factor of the three-part *Meyer* test—the nature of the NSC's delegated authority— in order for the court to conclude that the NSC is an "agency" under FOIA. *Id*.

To some extent, OA may be deemed proximate to the President. Like the NSC, OA is headed by the President, Reorganization Plan § 2, and the OA Director, who supervises the day-to-day functions of OA, is appointed by the President, *id*., and is subject to "direction or approval as the President may provide or require," Exec. Order No. 12028, § 4(a) (as amended by Exec. Order No. 12122). The OA Director does not regularly report directly to the President, but he does report to senior White House staff, and he provides advice to the President, through the Deputy Chief of Staff, on matters such as budget and appropriations issues, cyber security and threats, and administrative questions. *See supra* p. 201.

On the other hand, OA does not share the kind of "intimate organizational and operating relationship" with the President that the NSC does. *Armstrong*, 90 F.3d at 560. For example, in *Armstrong* the President was described as "working in close contact with" and "direct[ly] supervis[ing]" the National Security Adviser, who controls the NSC staff. *Id*. Here, by contrast, the President rarely if ever works "in close contact with" or "direct[ly] supervis[es]" the OA Director. In this sense, therefore, OA is not as "proximate" to the President as his "immediate personal staff," *Kissinger*, 445 U.S. at 156, who interacts with him on a regular basis.

Like the analysis of whether an EOP entity has a self-contained structure, however, the analysis of an EOP entity's proximity to the President does not ultimately determine whether it is an agency for purposes of FOIA. Although an entity's proximity to the President may suggest a lack of substantial independent authority, *see Armstrong*, 90 F.3d at 560 (NSC's close proximity to the President required plaintiff to make a "strong showing . . . regarding the remaining factor under *Meyer*"), it does not follow that a more distant relationship itself establishes independent authority, much less substantial independent authority. Rather, such a determination requires an examination of the authority actually exercised by the entity.

## C.

Thus, our analysis ultimately turns on the nature of OA's delegated authority. As explained below, we believe that because OA only provides administrative support to the EOP, it does not exercise "substantial independent authority."

In a very similar case, the D.C. Circuit found a lack of substantial independent authority where the entity performed administrative functions for the President. In *Sweetland v. Walters*, 60 F.3d 852 (D.C. Cir. 1995), the court determined that the Executive Residence of the President, which "provides for the operation of the Executive Residence" by, among other things, conducting "general housekeeping, prepar[ing] and serv[ing] meals, greet[ing] visitors, and provid[ing] services as required in support of official and ceremonial functions," *id*. at 854, does not wield substantial independent authority.[3] The court explained that "the Residence staff's functions demonstrate[] that it is exclusively dedicated to assisting the President in maintaining his home and carrying out his various ceremonial duties," and that the staff "does not oversee and coordinate federal programs . . . or promulgate binding regulations." *Id*. Accordingly, the court concluded, the staff of the Executive Residence does not have "delegated independent authority" and is therefore "not an agency as defined in FOIA." *Id*. at 854-55.[4]

We think that OA's authority is closely analogous to the authority of the Executive Residence at issue in *Sweetland*. By executive order, OA exercises the authority to "provide components of the Executive Office of the President with such administrative services as the President shall from time to time direct." Reorganization Plan § 2. The President likewise has delegated to the OA Director, as the chief administrative officer, the authority to "organize [OA], contract for supplies and services, and do all other things that the President, as head of [OA], might do." Exec. Order No. 12028, § 4(a) (as amended by Exec. Order No. 12122). OA's mission is "to provide administrative services to all entities of the [EOP], including direct support services to the President." Office of Administration, http://www.whitehouse.gov/oa (last visited ca. 2007). Such services include "financial management and information technology support, human resources management, library and research assistance, facilities management, procurement, printing and graphics support, security, and mail and messenger operations." *Id*.

---

[3] The D.C. Circuit held in 1995 that the Executive Residence was not a unit within the EOP, but was "analogous to an EOP unit for purposes of a FOIA analysis." *Sweetland*, 60 F.3d at 854. The White House subsequently incorporated the Executive Residence into the EOP in 2002. *See* Memorandum for Gary Walters, Chief Usher, Executive Residence, from Andrew H. Card, Jr., White House Chief of Staff (June 11, 2002).

[4] The court also noted that the responsibilities of the Executive Residence, as is the case with OA, are carried out "under the direction of the President" or "with the approval of the President." 60 F.3d at 855 (citation omitted); *see also Armstrong*, 90 F.3d at 563 (plaintiff "has not . . . established that any of [the NSC's] authority can be exercised without the consent of the President").

OA is therefore very much like the Executive Residence in that its role is to provide services in support of the President by assisting the staff of the EOP. OA's mission is to provide the necessary administrative support for the staff of the EOP "so that policy-making staff elsewhere in the EOP can focus on national policy decisions without having the distractions caused by routine administrative services." *See* Executive Office of the President, Office of Administration, Congressional Budget Submission, FY 2006, at 69. Like the Executive Residence, OA does not have any authority to make policy or supervise other units of the Executive Branch. Rather, the heads of other EOP offices remain responsible for policymaking functions where those functions may overlap with OA's responsibilities. Exec. Order No. 12028, § 4(d) (as amended by Exec. Order No. 12122) ("The Director shall not be accountable for the program and management responsibilities of units within the [EOP]; the head of each unit shall remain responsible for those functions."). Accordingly, because the "ultimate authority to set objectives, determine policy, and establish programs rests elsewhere," and OA's sole function is to provide administrative support, OA does not exercise the substantial independent authority required for a FOIA agency. *Armstrong*, 90 F.3d at 564.

Indeed, OA's non-substantive, administrative support authority stands in stark contrast with the kind of authority exercised by the EOP units determined by the D.C. Circuit to be agencies under FOIA: the Office of Science and Technology had authority, transferred to it from the National Science Foundation, "to evaluate the scientific research programs of the various federal agencies," *Soucie*, 448 F.2d at 1073; the Council on Environmental Quality had regulatory authority over federal agencies, *see Pac. Legal Found. v. Council on Envt'l Quality*, 636 F.2d 1259, 1262 (D.C. Cir. 1980); and the Office of Management and Budget had a statutory duty to prepare the budget submitted to Congress by the President, *Sierra Club v. Andrus*, 581 F.2d 895, 902 (D.C. Cir. 1978), *rev'd on other grounds*, 442 U.S. 347 (1979). The D.C. Circuit has never held that an administrative office like OA exercises the "substantial independent authority" of a FOIA agency.[5]

---

[5] As the discussion in this memorandum has indicated, when the D.C. Circuit analyzes whether an EOP unit is an agency under FOIA, it focuses on whether the entity exercises "substantial independent authority" and not on whether the "sole function" of the entity is to "advise and assist" the President. *See, e.g., Armstrong*, 90 F.3d at 558–66; *Sweetland*, 60 F.3d at 853–55. The implication of the D.C. Circuit decisions is that as long as a unit of the EOP exercises no substantial independent authority, it should be classified as a unit that functions to advise and assist the President for purposes of being exempt from FOIA, without requiring a separate showing as to how the unit provides both advice and assistance to the President. The opinion in *Sweetland*, for example, contains no discussion of whether the staff of the Executive Residence functions to "advise" the President, strongly suggesting that as long as a unit of the EOP exercises no substantial authority independently of the President, it is not subject to FOIA. Therefore, although OA does in fact advise the President, *see supra* p. 188, it is not necessary that OA "advise" as well as "assist" the President in order for OA to be classified as a "unit[] in the Executive Office whose sole function is to advise and assist the President." *Kissinger*, 445 U.S. at 156 (internal quotations and citations omitted).

Finally, we emphasize that OA differs from the EOP entities that have been held to be agencies for purposes of FOIA in the additional respect that its responsibilities derive entirely from executive orders of the President; OA does not trace its authority back to a federal statute. An office within the EOP will be more likely to act independently of the President when, like an agency outside the EOP, the office is charged with specific duties by statute, rather than by an immediate delegation from the President. *See Armstrong*, 90 F.3d at 565. Thus, the D.C. Circuit relied on the Office of Science and Technology's statutory authority to evaluate federal scientific programs, *see Soucie*, 448 F.2d at 1075, and the Office of Management and Budget's statutory responsibility over the budget, *see Andrus*, 581 F.2d at 902, in holding that both offices are FOIA agencies. By contrast, Congress neither created OA nor charged it with any statutory responsibility. Rather, OA's authority derives solely from an executive order, the Reorganization Plan, which places the office under the direct supervision of the President. The President serves as the head of OA, and the Director remains "[s]ubject to such direction or approval as the President may provide or require." Exec. Order No. 12028, § 4(a) (as amended by Exec. Order No. 12122).

## III.

For the foregoing reasons, we conclude that the authority delegated by the President to OA to provide administrative support does not constitute "substantial independent authority." We therefore conclude that OA is not an "agency" for purposes of FOIA.

STEVEN A. ENGEL
*Deputy Assistant Attorney General*
*Office of Legal Counsel*