# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 14, 2008　　　　　Decided May 19, 2009

No. 08-5188

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,
APPELLANT

v.

OFFICE OF ADMINISTRATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-00964)

*Anne L. Weismann* argued the cause for appellant. With her on the briefs was *Melanie T. Sloan*.

*Paul J. Orfanedes*, *Dale L. Wilcox*, and *James F. Peterson* were on the brief for *amicus curiae* Judicial Watch, Inc., in support of appellant.

*Thomas M. Bondy*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Gregory G. Katsas*, Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, and *Mark B. Stern*, Attorney. *Mark R. Freeman* and *Michael S. Raab*, Attorneys, and *R. Craig Lawrence*, Assistant U.S. Attorney, entered appearances.

Before: SENTELLE, *Chief Judge*, GRIFFITH, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: This is the latest in a line of cases in which we are asked to decide whether a unit within the Executive Office of the President is covered by the Freedom of Information Act, 5 U.S.C. § 552 (2006). In this case, we conclude that the Office of Administration is not because it performs only operational and administrative tasks in support of the President and his staff and therefore, under our precedent, lacks substantial independent authority.

**I.**

Citizens for Responsibility and Ethics in Washington (CREW) alleges that the Office of Administration (OA) discovered in October 2005 that entities in the Executive Office of the President (EOP) had lost millions of White House e-mails. In April 2007, CREW made a FOIA request of OA asking for information about the missing e-mails. CREW sought records about the EOP's e-mail management system, reports analyzing potential problems with the system, records of retained e-mails and possibly missing ones, documents discussing plans to find the missing e-mails, and proposals to institute a new e-mail record system. OA agreed to produce the records but asked CREW to either limit the scope of the request or set a new timetable, protesting that it could not meet FOIA's timeframe for expedited requests given the broad scope of the inquiry. CREW responded that its request was not so broad as OA supposed and held fast to its demand that the documents be produced within FOIA's time limits. When the deadline passed and OA had not turned over the

records or even provided an anticipated date for doing so, CREW filed this action in May 2007.

In June 2007, the parties agreed to a timeline for producing the records, but within weeks OA changed course and told CREW, for the first time in this dispute, that it is not covered by FOIA because it provides administrative support and services directly to the President and the staff in the EOP, putting it outside FOIA's definition of "agency." Even so, OA produced some of the records, but only, in its own words, "as a matter of administrative discretion." Letter from Carol Ehrlich, Freedom of Information Act Officer, Office of Admin., to Anne Weismann, CREW (June 21, 2007). OA refused to turn over the bulk of the potentially responsive records—more than 3000 pages.

In August 2007, OA took its argument to the district court and filed a motion for judgment on the pleadings. CREW opposed the motion, asserting, among other things, that discovery was needed on the jurisdictional question whether OA is covered by FOIA. The district court denied OA's motion without prejudice and allowed CREW to conduct limited jurisdictional discovery to explore "the authority delegated to [OA] in its charter documents and any functions that OA in fact carries out." *Citizens for Responsibility & Ethics in Wash. v. Office of Admin.*, No. 07-964, at 6 (D.D.C. Feb. 11, 2008) (order denying motion for judgment and directing discovery). The court ordered discovery on whether "OA acts with the type of substantial independent authority that has been found sufficient to make" other EOP units "subject to FOIA." *Id.* at 5. OA produced more than 1300 pages of records about its responsibilities, provided a sworn declaration by its general counsel, and submitted its director to a deposition.

Following discovery, the district court granted OA's motion to dismiss CREW's complaint for lack of subject matter jurisdiction, *see* FED. R. CIV. P. 12(b)(1), concluding that OA is not an agency under FOIA because it "lacks the type of substantial independent authority" this court "has found indicative of agency status for other EOP components." *Citizens for Responsibility & Ethics in Wash. v. Office of Admin.*, 559 F. Supp. 2d 9, 21 (D.D.C. 2008). For the same reason, the district court held in the alternative that CREW had failed to state a claim for relief, *see* FED. R. CIV. P. 12(b)(6). On CREW's motion for a stay pending appeal, the court ordered OA to preserve and keep in its control any records that might be responsive to CREW's FOIA request.

CREW appeals the district court's dismissal of the complaint and the limits placed on the scope of jurisdictional discovery. We have jurisdiction under 28 U.S.C. § 1291 (2006). We review de novo the district court's grant of OA's motion to dismiss. *See Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1432 (D.C. Cir. 1995). We review the district court's limits on discovery for abuse of discretion. *See Islamic Am. Relief Agency v. Gonzalez*, 477 F.3d 728, 737 (D.C. Cir. 2007).

## II.

Congress enacted the Freedom of Information Act in 1966 to provide public access to certain categories of government records. The Act strives "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). Described in its most general terms, FOIA requires covered federal entities to disclose information to the public upon reasonable request, *see* 5 U.S.C. § 552(a), unless

the information falls within the statute's exemptions, *see id.* § 552(b).

By its terms, FOIA applies only to an "agency," and the key inquiry of this appeal is whether the Office of Administration is an agency under the Act. In the original statute, "agency" was defined broadly as any "authority of the Government of the United States . . . ." Administrative Procedure Act, Pub. L. No. 89-554, § 551(1), 80 Stat. 378, 381 (1966) (codified as amended at 5 U.S.C. § 551(1)). In 1974, Congress amended the definition of "agency" to include, more specifically, "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f)(1).[1] Although the 1974 amendments

---

[1] President Franklin Delano Roosevelt created the EOP through the authority granted him by Congress. *See* Reorganization Act of 1939, ch. 36, 53 Stat. 561 (1939). He submitted two reorganization plans to Congress that set forth the EOP's structure. *See* Reorganization Plan No. I of 1939, 4 Fed. Reg. 2727 (July 1, 1939), *reprinted in* 5 U.S.C. app. at 527 (2006), *and in* 53 Stat. 1423 (1939); Reorganization Plan No. II of 1939, 4 Fed. Reg. 2731 (July 1, 1939), *reprinted in* 5 U.S.C. app. at 534 (2006), *and in* 53 Stat. 1431 (1939). President Roosevelt intended that the EOP would "reduce the difficulties of the President in dealing with the multifarious agencies of the executive branch and assist him in distributing his responsibilities as the chief administrator of the Government by providing him with the necessary organization and machinery for better administrative management." Reorganization Plan No. I of 1939, Message of the President, *reprinted in* 5 U.S.C. app. at 531 (2006). Today, the EOP is overseen by the President's Chief of Staff and consists of temporary and permanent units that help the President develop and implement his policy agenda, manage the functioning of the executive branch, and communicate

expressly include the EOP within the definition of "agency," the Supreme Court relied upon their legislative history to hold that FOIA does not extend to "the President's immediate personal staff or units in the Executive Office [of the President] whose sole function is to advise and assist the President," *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980) (quoting H.R. REP. NO. 93-1380, at 15 (1974) (Conf. Rep.)). The Supreme Court's use of FOIA's legislative history as an interpretive tool has given rise to several tests for determining whether an EOP unit is subject to FOIA. These tests have asked, variously, "whether the entity exercises substantial independent authority," *Armstrong v. Executive Office of the President*, 90 F.3d 553, 558 (D.C. Cir. 1996) (internal quotation mark omitted), "whether . . . the entity's sole function is to advise and assist the President," *id.* (internal quotation mark omitted), and in an effort to harmonize these tests, "how close operationally the group is to the President," "whether it has a self-contained structure," and "the nature of its delegat[ed]" authority, *Meyer v. Bush*, 981 F.2d 1288, 1293 (D.C. Cir. 1993).

However the test has been stated, common to every case in which we have held that an EOP unit is subject to FOIA has been a finding that the entity in question "wielded substantial authority independently of the President." *Sweetland v. Walters*, 60 F.3d 852, 854 (D.C. Cir. 1995) (per curiam). In *Soucie v. David*, we concluded that the Office of Science and Technology (OST) is an agency covered by FOIA because it has independent authority to evaluate federal scientific research programs, initiate and fund research projects, and award scholarships. 448 F.2d 1067, 1073–75

---

with the public, Congress, and other groups. *See* Executive Office of the President, http://www.whitehouse.gov/administration/eop (last visited May 1, 2009).

(D.C. Cir. 1971). Similarly, we determined that the Office of Management and Budget (OMB) exercises substantial independent authority because it has a statutory duty to prepare the annual federal budget, which aids both Congress and the President. *See Sierra Club v. Andrus*, 581 F.2d 895, 902 (D.C. Cir. 1978). We noted that "Congress signified the importance of OMB's power and function, over and above its role as presidential advisor, when it provided . . . for Senate confirmation of the Director and Deputy Director of OMB." *Id.* We also held that the Council on Environmental Quality (CEQ) comes within FOIA because it "coordinate[s] federal programs related to environmental quality[,] . . . issue[s] guidelines to federal agencies for the preparation of environmental impact statements," and "issue[s] regulations to federal agencies for implementing all of the procedural provisions of [the National Environmental Policy Act]." *Pac. Legal Found. v. Council on Envtl. Quality*, 636 F.2d 1259, 1262 (D.C. Cir. 1980).

By the same token, we have consistently refused to extend FOIA to an EOP unit that lacks substantial independent authority. We held that the Council of Economic Advisors (CEA) was not covered by FOIA because it "has no independent authority such as that enjoyed either by CEQ or OST." *Rushforth v. Council of Econ. Advisors*, 762 F.2d 1038, 1042 (D.C. Cir. 1985). Specifically, we noted that CEA "has no regulatory power under [its] statute. It cannot fund projects based on [its] appraisal, as OST might, nor can it issue regulations for procedures based on the appraisals, as CEQ might." *Id.* at 1043. And although President Ronald Reagan's Task Force on Regulatory Relief comprised senior White House staffers and cabinet officers whose agencies fall under FOIA, we concluded that the Task Force was not a FOIA agency because it lacked substantial authority independent of the President "to direct executive branch

officials." *Meyer*, 981 F.2d at 1297. The Task Force reviewed agency rules and proposed regulatory revisions to the President, but it could not issue guidelines or other types of directives. *See id.* at 1289–90, 1294. Nor is the National Security Council (NSC) covered by FOIA because it plays no "substantive role apart from that of the President, as opposed to a coordinating role on behalf of the President." *Armstrong*, 90 F.3d at 565.

And in *Sweetland*, we held that members of the Executive Residence staff do not exercise substantial authority independent of the President because they only "assist[] the President in maintaining his home and carrying out his various ceremonial duties." 60 F.3d at 854. Specifically, they "provide[] for the operation of the [residence]" by preparing meals, greeting visitors, making repairs, improving the rooms' mechanical systems, and providing needed services for official functions. *Id.* *Sweetland*'s analysis and disposition have special force in this matter because it involved an EOP unit that, like OA, provided to the President only operational and administrative support. Where that is the purpose and function of the unit, it lacks the substantial independent authority we have required to find an agency covered by FOIA. *See id.* (emphasizing that the "staff of the Executive Residence exercises none of the independent authority that we found to be critical in holding other entities that serve the President to be agencies subject to FOIA").

OA's charter documents created an office within the EOP to perform tasks that are entirely operational and administrative in nature. President Jimmy Carter proposed OA as the "base for an effective EOP budget/planning system through which the President can manage an integrated EOP rather than a collection of disparate units." Reorganization

Plan No. 1 of 1977, Message of the President, H.R. DOC. NO. 95-185 (July 15, 1977), *reprinted in* 5 U.S.C. app. at 661 (2006). OA "shall provide components of the [EOP] with such administrative services as the President shall from time to time direct." Reorganization Plan No. 1 of 1977, § 2, 42 Fed. Reg. 56,101, 56,101 (July 15, 1977), *reprinted as amended in* 5 U.S.C. app. at 658 (2006), *and in* 91 Stat. 1633, 1633 (1977). President Carter ordered OA to "provide common administrative support and services to all units within [the EOP], except for such services provided [by the White House] primarily in direct support of the President." Exec. Order No. 12,028, 42 Fed. Reg. 62,895, 62,895 (Dec. 12, 1977). However, OA "shall, upon request, assist the White House Office in performing its role of providing those administrative services which are primarily in direct support of the President." *Id.* OA continues to exercise these same functions and duties today. *See* Office of Administration, http://www.whitehouse.gov/administration/eop/oa (last visited May 1, 2009) ("The organization's mission is to provide administrative services to all entities of the [EOP], including direct support services to the President of the United States."). Significantly, OA's director is "not accountable for the program and management responsibilities of units within the [EOP]"; instead, "the head of each unit . . . remain[s] responsible for those functions." Exec. Order No. 12,122, 44 Fed. Reg. 11,197, 11,197 (Feb. 26, 1979).

As its name suggests, everything the Office of Administration does is directly related to the operational and administrative support of the work of the President and his EOP staff. OA's services include personnel management; financial management; data processing; library, records, and information services; and "office services and operations, including: mail, messenger, printing and duplication, graphics, word processing, procurement, and

supply services." Exec. Order No. 12,028, 42 Fed. Reg. at 62,895. CREW contends that OA's support of non-EOP entities—including the Navy, the Secret Service, and the General Services Administration—undermines the government's argument. But those units only receive OA support if they work at the White House complex in support of the President and his staff. Assisting these entities in these activities is consistent with OA's mission. *See Citizens for Responsibility & Ethics in Wash.*, 559 F. Supp. 2d at 16; *see also* Def.'s Mem. in Support of its Mot. To Dismiss for Lack of Subject Matter Jurisdiction at 19, *Citizens for Responsibility & Ethics in Wash. v. Office of Admin.*, No. 07-964 (D.D.C. Apr. 25, 2008) ("OA has interagency agreements for OA's provision of voice systems operation and maintenance on the White House complex to several non-EOP entities . . . because of those entities' presence there to support the EOP."). Because nothing in the record indicates that OA performs or is authorized to perform tasks other than operational and administrative support for the President and his staff, we conclude that OA lacks substantial independent authority and is therefore not an agency under FOIA.

CREW insists that OA is covered by FOIA because it thought itself so for nearly thirty years, complying with FOIA requests and even issuing regulations governing the process for producing records under the statute. In response, the government argues there has been on ongoing discussion in the Executive Branch questioning OA's status under FOIA since at least 1995, when the district court in *Armstrong v. Executive Office of the President*, 877 F. Supp. 690 (D.D.C. 1995), considered the application of FOIA to the NSC. The government also points to a brief it filed in the district court in 2000 in a Privacy Act case, arguing that there was some doubt about whether OA was subject to FOIA because it lacked substantial independent authority. *See* Mem. in Support of

Def.'s Mot. for Partial Summ. J. at 26 n.8, *Barr v. Executive Office of the President*, No. 99-1695 (D.D.C. Feb. 24, 2000).

The history of OA's positions on the matter is of no moment because we have been clear that past views have no bearing on the legal issue whether a unit is, in fact, an agency subject to FOIA. In *Armstrong*, we held that the NSC's "prior references to itself as an agency are not probative on the question . . . whether [it] is indeed an agency within the meaning of the FOIA." 90 F.3d at 566. Even though the NSC had taken the view on numerous occasions, including in litigation, that it was covered by FOIA, we concluded that NSC's past position "should not be taken to establish as a matter of law[] that the NSC is subject to" FOIA, *id.* We conclude the same for OA.

CREW raises two more arguments on appeal, neither of which warrants reversal. Although the district court dismissed the complaint for failure to state a claim under Rule 12(b)(6), CREW argues the district court erred by also dismissing the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). We agree. CREW's claims were not "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit" to warrant "[d]ismissal for lack of subject-matter jurisdiction," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). But this error does not require reversal. We "may affirm on different grounds the judgment of a lower court if it is correct as a matter of law." *In re Marin*, 956 F.2d 335, 339 (D.C. Cir. 1992). Because we conclude that OA is not an agency covered by FOIA, we find sufficient grounds to affirm the district court's dismissal of the complaint for failure to state a claim. *See Sweetland*, 60 F.3d at 855 (affirming the district court's decision that the complaint, which alleged FOIA violations by members of the Executive Residence,

could be dismissed under Rule 12(b)(6), but refusing to uphold the dismissal under Rule 12(b)(1)).

Finally, CREW contends that the district court abused its discretion by limiting discovery to jurisdictional issues. We give the district court much room to shape discovery. *See, e.g.*, *Islamic Am. Relief Agency*, 477 F.3d at 737 (explaining that the "district court has broad discretion in its handling of discovery"). CREW argues that the district court should have ordered OA to produce a variety of records, including documents disclosing OA's organizational structure, OA staff manuals, all record disposition schedules OA submitted to the National Archives since 1977, any documents discussing OA's retention of its records, all materials relating to OA's implementation of FOIA, and the most recent information management plan. The record shows the district court allowed CREW to obtain more than 1300 pages of documents that shed light on OA's authority and operations, an understanding of which is critical for determining whether OA is subject to FOIA. OA also submitted a declaration from its general counsel discussing the timeline of the government's internal deliberations about its agency status, and it permitted OA's director to be deposed and questioned by CREW attorneys about OA's history of compliance with FOIA, its interactions with federal agencies, and the duties OA performs. The district court appropriately refused CREW's discovery requests that did not speak to the question whether OA is an agency, that involved issues already addressed in the record, or that pertained to matters not in dispute. We conclude that the district court provided CREW ample opportunity to obtain materials exploring whether OA is an agency under FOIA.

## III.

For the foregoing reasons, we hold that OA need not comply with CREW's requests because it is not an agency under FOIA. The judgment of the district court is

*Affirmed.*